AL. FRIEDLANDER v. PUGH, SLOCOMB & CO.

1. CONTRACTS—PART PERFORMANCE—MEASURE OF DAMAGES.—It is by no means a sound doctrine of law, or of morals, that when one party to a contract is hindered from full performance by the other, the one hindering the other can, in all cases, be held liable in damages to the extent of the entire price agreed on for full performance. In such case the true rule, resting upon the best authority and the soundest reasoning, is that the just claims of the party so hindered are satisfied when he is recompensed for the part performed, and for his actual loss in respect to the part unperformed.

Error to the circuit court of Yazoo county. CAMPBELL, J.

Plaintiff in error assigned the following errors:

1st. The verdict was contrary to evidence.

2d. The verdict was contrary to law.

3d. The damages are excessive.

4th. The court erred in refusing to give the defendants' second instruction.

*Garnett Andrews, Jr.*, for the plaintiff in error,

1st and 2d. Insisted that the testimony established a contract of agency whereby defendants in error became the agents of plaintiff in error, to sell as auctioneers, a stock of goods. The power of the agent, being uncoupled with an interest, was revocable at the pleasure of Friedlander. Hunt v. Rousmanier, 8 Wheat., 174. The defendants in error, as such agents, had no interest in Friedlander's goods, but only in the proceeds of their sale for their commissions. The goods remained in Friedlander's possession and in his house. 3 Chit. Com. Law, 547; Paley on Agency, by Lloyd, 137; 17 Mass. R., 197; 4 Camp., 291; 3 T. R., 119–783; 1 East., 4; 5 Binn., 392; 7 East., 5; 1 Stark. R., 123.

3d. If the court recognizes the correctness of these positions, then the damages found by the jury were erroneously excessive. And here we will consider what is the measure of the damages in this case, a point directly presented in the fourth error assigned. 4th. The court below erred in refusing to give the second instruction asked by the plaintiff in error. This instruction is, in substance, " That where there is a contract for services, and the party to render them is ready and willing to perform, but is prevented by the other party, the measure of damages is the value of the services actually rendered, with any specific damages such party may suffer by the refusal of the employer to let him complete the contract."

The principle embraced in the instruction refused has been fully recognized by this court in the case of Pritchard v. Martin, 27 Miss., 305–310. An unbroken array of leading cases and text books explicitly maintain the same doctrine. Chamberlain v. McCallister, 6 Davis' Ky. R., 352;

Caldwell v. Reed, Littell's Select Cases; Durkee v. Mott, 8 Barb., 423; Jones v. Van Patton, 3 Ind., 107; Shannon v. Comstock, 21 Wend., 457; Hackshaw v. McCrea, 24 Wend., 304–9; Clark v. Marsiglia, 1 Denio, 317; Wilson v. Martin, ib., 602; Spencer v. Halstead, ib., 606; Boardman v. Keeler, 21 Vermont, 78–84, 1 Gilm., 562; Miller v. Mariners Church, 17 Greenleaf, 51–55, 56; Smith's Leading Cases, 441; Sedgwick on Damages, 219, 220, 221. See also, Hadley v. Baxendale, 9 Excheq., 341; Meade v. Rutledge, 11 Texas, 44; 4 Cal., 392; 6 ib., 19; Powell on Ev., 215. See also, Chit. Pl., 321–326.

The case of Armfield v. Nash, 31 Miss., 361, relied upon by the defendant in error, goes no further than sustaining the rule of pleading, and the question of what is the measure of damages is not made or decided. Summed up briefly, this decision goes no farther than to say that the face of the pleadings shows a cause of action; they show "a contract and breach, as avered by the plaintiff, and that he had not been satisfied in his damages resulting from the breach."

All that Friedlander's second instruction claimed, was the benefit of the rule allowing mitigation of damages. But the overruling of that instruction bound the jury, without choice, to find damages at the rate of five per cent. upon what they might think the value of the entire stock. Such finding is open to the additional objection, that the damages were speculative, as no one could say what they would actually sell for at auction.

*Wilkinson & Bowman*, for defendants in error.

This case comes here on writ of error to the refusal of the court below to grant a new trial, and according to the repeated decisions of this court, you will look into the whole record to ascertain whether substantial justice has been done. All the testimony and the instructions given and refused are set out in the bill of exceptions, and it will be seen that the case turns upon the question, whether the court below erred in refusing the general instructions asked by the defendant.

The proof shows that the plaintiff below offered to perform

their part of the contract, which being refused by the defendant, they treated the refusal of defendant and their offer to perform, as equivalent to actual performance, and brought suit for the full amount. The rule we consider as settled; the contract fixes the measure of damages. Sedgwick on Damages, p. 199, *et seq.*

SIMRALL, J.:

This was a suit brought by attachment in the circuit court of Yazoo county, by Pugh, Slocomb & Co., against Friedlander, founded on a verbal contract, by which, as is alleged, Pugh, Slocomb & Co., agreed, as auctioneers, to sell at auction for Friedlander, merchandise to the value of $20,000, for which they were to be paid 5 per cent. on the amount of the goods, making the sum of $1000; that they were ready and willing, and offered to perform their part of the contract, but were prevented by Friedlander, who declined to let the sale be made.

The attachment was levied on personal effects, which were replevied. There was also service of summons on Friedlander. The cause was submitted to a jury on the issue of *non assumpsit*, who found a verdict for the plaintiff below, and assessed damages at $335.

Motion was made by Friedlander for a new trial, which was overruled—exception taken embodying the testimony—and the case is brought here by writ of error. The testimony shows that Friedlander, proposing to close his mercantile business in Yazoo City, and remove elsewhere, applied to Pugh, Slocomb & Co., who were auctioneers, to sell out his entire stock of merchandise, for which he was to pay a commission of 5 per cent. on the amount and value of the stock; the sale was advertised by posting notice at several public places, offering $20,000 worth of goods for sale, on the day named. Friedlander did not represent, or state to the auctioneers, that his stock was worth that sum of money, or any definite sum. The goods were to be sold in the store-house of Friedlander, and sale to continue from day to day, until finished. Johnson and Pugh, two of plain-

tiffs, contend that there was no condition that Friedlander might not withdraw his goods from auction, if he chose so to do, nor was there any understanding that he might not sell goods at private sale. When Friedlander stopped the sale, goods to the amount of between $500 and $550 had been sold.

Friedlander testified that he was to pay Pugh, Slocomb & Co., five per cent. on the amount of sales; that he continued with knowledge of Pugh, Slocomb & Co. to sell at private sale, and finding his goods at auction going off at ruinous prices and great sacrifice, he, for that reason, stopped the sale, and four or five days after, his goods were seized under the attachment. That his stock was worth between $8,000 and $9,000 at the time of the auction. W. C. Diles, clerk of Friedlander, took inventory of the stock shortly before the sale, which amounted to $8,000 or $9,000.

Johnson stated the additional fact, that Pugh, Slocomb & Co., have been in the habit of permitting parties who had goods with them for sale, to withdraw them before sale, and they did no service about said sale, except crying the goods and keeping a list of articles sold. The sale was confined to heavy goods, remnants, etc.

The errors assigned are that the verdict is contrary to the law and evidence. The damages are excessive. The court erred in refusing the second request for instructions by the defendant.

To determine the questions whether the damages are excessive, and whether the verdict ought to have been set aside, and a new trial awarded, depends on the proposition whether the court below erred in refusing to charge the jury as requested by the plaintiff in error, and whether such refusal may have operated to his prejudice. The suit was *ex contractu*, and sought compensation in damages for a breach of contract.

The general rule seems to be that for non-performance of contract, where the damages are unliquidated, incapable by arithmetical calculation of being reduced to certainty, the

criterion is, *quantum meruit*, or *quantum valebat*, as the case may be. The end of the law is to furnish full and adequate satisfaction for the injury sustained by consequence of the breach.

The instruction which was refused, is to the effect " that, if there was a certain and specific contract, and that the plaintiffs were prevented from fully performing their part of it by the defendant, then plaintiffs can recover the value of services which they actually rendered, and any specific damages which they prove they actually sustained by reason of defendant's refusal to let them complete their contract, and no more." The testimony shows that there had been a partial sale of the goods, a part performance of the contract, and a willingness and offer to go on and fully execute it by a sale of the entire stock which was prevented by the plaintiff in error.

We are of the opinion that the instruction asked had a direct application to the state of facts before the jury, and that it substantially embraced the rule that ought to have guided in assessing the damages, and that its refusal may have prejudiced the plaintiff in error. We take the rule, as settled by the better considered cases, and resting on the soundest reasoning, to be this : When there has been part performance of the contract, the just claims of the party employed to do the labor or service are satisfied when he is recompensed for the part performed, and indemnified for his loss in respect to the part unexecuted. By no means, as contended for by the counsel for the defendant, is it a sound doctrine of law or of morals, that when one party is hindered and prevented by the other from a performance of the contract, that the one in default can be fairly held to compensate in damages, in all circumstances, to the extent of the price agreed to be paid on full performance.

A covenants to sell B a parcel of land for a specific price, and executes and tenders a deed in compliance with his agreement, which B refuses to accept; thereupon A sells and conveys the land to C for the same price, and immediately

sues B on his covenant.  If an offer to perform were equivalent, on this point "of measure of damages," to a performance, then A ought to recover the whole price which B obligates himself to pay.  If that were allowed, A would realize double value for his land.

In Clark v. Marsiglia, 1 Denio, 318, an artist was engaged to clean and repair paintings.  After doing part of the work, he was instructed by the employer to desist.  It was held that damages should be allowed which would recompense for the labor done and materials used, and such further sum as might, on legal principles, be assessed for the breach. But the employee had no right, after he was ordered to desist, to go on with the work, and thereby make the penalty on the employer greater than it otherwise would have been.

In Hickletter v. McCrea, 24 Wend., 314, a merchant took up 330 tons freight room of a ship loading at Canton for New York, but furnished cargo for only 200 tons.  After a failure to supply the full amount of cargo, and notification to the master, of inability to do so, other parties offered freight, but at less price per ton.  In settling the measure of responsibility to the ship owner, it was held that the merchant was not liable for the freight on the 130 tons which he failed to put on the vessel, at the price per ton agreed, there being no fraud or imposition in his conduct.  But so much as the ship might have realized from other cargo, to supply the deficit, and which was refused, ought to have been estimated for the benefit of the ship owners.

In Miller v. Mariners Church, 7 Greenl. R., 51–56, the principle is very forcibly stated thus:  If the party entitled to the benefit of the contract can protect himself from loss arising from a breach, at a reasonable expense or with reasonable exertions, he fails in his duty if he omits to do so regardless of the increased amount of damages for which he may intend to hold the other contracting party.

The principle is thus illustrated:  A laborer is engaged to work for a month—he applies to perform—the hirer declines the service.  The next day he is employed by somebody else,

at equal wages.   It is certain that one day covers the loss of time, and it would be unjust to allow him the entire month's wages for the breach of contract.   Nor would the result be materially changed if employment were at hand, at fair prices, and he should refuse to avail of it.   Baldwin v. Mann, 2 Wend., 300 ; Hauseau v. Thornhill, 2 Blackf., 1078.  On sale of commodities to be delivered *in futuro*, the extent of damages for non-delivery is the value of the commodities at the time of delivery.

An advantageous contract of resale made by the vendee, trusting to the vendor's promise to deliver the article, are considerations not to be estimated as too remote and contingent to affect the question of damages.   Clare v. Maynard, 6 Adol. & Cress., 519 ; Walker v. Moore, 10 Barn. & Cress., 416 ; Shepherd v. Hamp, 3 Wheat., 200.   In the case of Masterson v. Mayor of Brooklyn, 2 Hill, N. Y., 75, the contract was to deliver a large quantity of stone.   Part was delivered, when an order was given to deliver no more.   The New York court states the abstract rule to be, that so far as performance has been made, recovery should be had according to the terms of the contract.   The party ready to perform should not suffer by the delinquency of the other party.

A case reported in 3d Indiana Rep., 107, the court commenting on a state of facts where a trader had engaged one Shultz to furnish a flatboat, equipments and men to transport produce to sundry points on the lower Mississippi, but after the boat was built the trader declined to prosecute the adventure—after declaring that the employee was not entitled to the sum to be paid for performance, lays down the rule by which his claim was to be measured ; that he ought to recover what would reasonably make him whole at the time of the breach—all the circumstances of the case being considered, perhaps the principle cannot be stated in language more precise and definite.   Pritchard v. Martin, 27 Miss. Rep., 310, was the case of an overseer who had been turned off by his employer before his term of service had expired, without any or a sufficient cause.   It was in evidence after

his discharge that " the overseer used great exertion to get another situation—that being the business he followed—but could not get one—all being filled at that season of the year."

The court say the action may be brought immediately on the breach of the contract by employer, and the plaintiff may recover not only damages actually sustained previous to the commencement of the suit, but for such as may occur in consequence of, and after breach, and within the contemplation of the contract.

Reluctant as we are to disturb the verdict of the jury, especially in cases where the damages are unliquidated, and incapable of nice and accurate ascertainment, and declining to do so in those cases where substantial justice has been done on the facts, although erroneous instructions may have been given by the court, yet where the verdict may rest on an improper basis, and that basis has been in any wise, the fault of the court in misleading them, or in declining to give them correct rules to guide them, it is the duty of the revising court to set aside the verdict.

Two of the plaintiffs below, in their testimony, say they were to be paid commissions on the stock of goods. The defendant deposed that, by the contract, the commissions were to be on the sales. Shortly before the auction, the clerk of Friedlander took account of stock; the inventory was between eight and nine thousand dollars. Private sales, with the acquiesence of the defendants in error, were continued through the auction. Friedlander says the goods were withdrawn from auction to prevent sacrifice. Moreover, the defendants in error sued out their attachment and levied, before making a demand on Friedlander for payment of their claim, or informing him of the amount. The habit and custom of these auctioneers was to allow their customers to withdraw merchandise left with them for sale. It does not appear that there was either bad faith, deceit, or imposition practiced by Friedlander. No other service was rendered except to cry the goods and note the sales.

The jury may have allowed the defendants in error com-

pensation at the contract rate, and as if there had been full execution of the contract. This, as we have seen, is not in this class of cases, the proper criterion. For the error of the circuit court in refusing the second instruction, requested by the plaintiff in error, the verdict and judgment is set aside, and a *venire facias* awarded.

> *Judgment Reversed, and Cause Remanded.*