## John Huckestein, Appellant, *v.* The Nunnery Hill Incline Plane Company.

*Contract—Construction of contract—Receipt.*

Plaintiff, an owner of land over which the defendant was about to construct an incline plane, wrote to the defendant that he desired that the trestles should be set so that their base should be no higher than the grade of a certain street, or at a rise of four or five feet to the hundred feet from the street grade. Defendant accepted the proposition with the modification that the east wall should be " of the height of the grade as it now is immediately west and next to the trestle." On the same day that the proposition was accepted, plaintiff and defendant entered into an agreement in writing by which plaintiff agreed to do all the necessary excavation for defendant " according to the directions and under the supervision of the engineer in charge of the construction of said incline." Nothing was said in any of the papers as to any earth excavation. After the work was completed plaintiff gave to defendant a receipt " in full settlement for all stone work and excavation " furnished in connection with the construction of the incline plane. Nearly six years after the road was finished plaintiff brought suit against defendant to recover profits which he would have made by earth excavation if the trestles had been set at the level of the street mentioned in his proposition instead of upon the natural surface of the ground as they had been set in accordance with the instructions of the defendant's engineer. *Held*, that plaintiff was not entitled to recover such profits.

Argued Nov. 6, 1895. Appeal, No. 225, Oct. T., 1895, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1893, on verdict for plaintiff. Before Green, Williams, Mc-Collum, Mitchell, Dean and Fell, JJ. Affirmed.

Assumpsit for breach of contract. Before Kennedy, P. J.

. At the trial it appeared that plaintiff, in 1887, owned a piece of property in Allegheny city known as the Swan property, across which defendant intended to construct an incline plane. On February 7, 1887, plaintiff wrote to defendant's agent as follows :

"Dear Sir : In compliance with the intimations at my interview with Mr. Kennedy, Mr. Hamilton and yourself, that I should reduce to writing my notions as to the manner in which the Nunnery Hill Incline should be built, where it traverses my property, I would suggest that there be masonry wall under the

track from my western line to the water spring at the western line of roadway to my stable yard, and there return to the northern line of track—and a similar wall on the east line of the entrance roadway from the street line to north side of track—(At this roadway I will extend at my own cost and expense from the north line of the tracks whatever additional wall I think may be necessary.) On the north side of track fronting my property there should be a retaining or yard wall from my western line to the west line of roadway entrance built to the height of say within one foot of the ground under my porch—these walls to be built of sufficient thickness and faced with good sandstone facing and laid in cement, or good lime mortar.

" Where the road goes over the old Swan property, I would wish the trestles to be set so that their base, or bottom of the sill, shall be no higher than the grade of Henderson street—or if good foundation can be obtained at a raise of four or five to the 100 feet from the Henderson street grade I would have no particular objection. I would also want these trestles constructed and located so that I can make use of the lots between them and under the tracks—and drive through the openings if necessary between every trestle."

This proposition was accepted and the following paper signed :

" PITTSBURGH, Pa., March 29, 1887.

" This proposition is accepted with the provision and modification that the stone and character and quality of said wall shall be selected and determined by the Incline Plane Company's Engineer, and shall be the same as the south wall, and shall not exceed an average height of twelve feet from the top of cross ties of said inclined road, taking the total length of Huckenstein's property.

" This wall under trestle No. one, that is the eastern wall referred to as the wall on the east line of entrance roadway, shall be of the height of the ground as it now is immediately east and next to the trestle. Said Huckestein agrees to the modifications above stated.

" (Signed)      JOHN HUCKESTEIN,            [SEAL.]
" OLIVER P. SCAIFE, Pres.,
" ARTHUR KENNEDY, Sec."

Plaintiff agreed to do the excavation and stonework for the

incline plane, and the following agreement was executed by the parties.

"Articles of agreement entered into this 25th day of March A. D. 1887, between John Huckestein, of the city of Allegheny, state of Pennsylvania, party of the first part, and the Nunnery Hill Inclined Plane Company of same city and state, party of the second part.

"Witnesseth : That said party of the first part, for the consideration hereinafter mentioned, hereby agrees to do all the necessary excavation, repaving, curb-setting and mason work required in the construction of said Nunnery Hill Inclined Plane, as described in the annexed specifications, and according to the directions and under the supervision of the engineer in charge of the construction of said incline. Said party of the first part further agrees to employ such force as in the judgment of said engineer will be required for the prompt execution of the work.

"In consideration of which the party of the second part hereby agrees to pay to the party of the first part for every cubic yard of material excavated the price of fifty-five (55) cents, for every lineal foot of curb raised and reset, including the tearing up of pavement and repaving with same material, the price of forty-five (45) cents, and for every perch of masonry built, the price of three dollars and seventy-five cents ($3.75.)

"Payments to be made upon monthly estimates furnished by the Incline Company's engineer, of the amounts of such estimates, fifteen (15) per centum to be retained until all the work embraced in this contract is completed, when upon final estimate of said engineer, the whole of the amount due, including the amounts retained, shall be paid to the party of the first part.

"It is further agreed between the two parties, that in case a dispute should arise between said parties, as to quality, quantity or price of any work or material that is to be rendered according to the sense and meaning of this contract and the specifications governing said work, the decision of said Incline Company's engineer shall be final and conclusive."

Nothing was said in the specifications accompanying the contract as to earth excavations.

On December 1, 1888, plaintiff executed the following receipt :

"PITTSBURGH, December 1, 1888.

"900.00

"Rec'd of Incline Plane Construction Co. per hands of Wm. B. Scaife & Sons Nine Hundred dollars in full settlement for all stone work and excavation, labor, material &c. furnished in connection with the construction &c. of the Nunnery Hill Inclined Plane.

"HUCKESTEIN & Co."

Plaintiff claimed that inasmuch as the trestles had been set upon the natural surface of the ground, and not at the grade of Henderson street, he was not permitted to do about forty-six thousand cubic yards of loose earth excavations, and claimed to recover $6,300 which would have been his profits if he had been permitted to do this work.

The court charged in part as follows:

The defense is that in the acceptance of this proposition of Mr. Huckestein, which is dated in February, and which is accepted, I believe, on March 29, they modified his proposition. By that modification, which is with reference to the first mud sill, or the sill under the first piers of this incline, they say its location is changed in the acceptance. That is true, gentlemen, it was so modified in the acceptance of the proposition. And they say that by that modification, to construct the plane, in accordance with the proposition made by Mr. Huckestein, and as he claims it should have been done, was impracticable; that they could not, starting with the first pier as it was arranged to be placed in accordance with the modification accepting Mr. Huckestein's proposition, that they could not reasonably have constructed it in accordance with his proposition, that that changed the whole character of the construction, and that therefore the whole thing was thrown open to the discretion of the company's engineer, Mr. Diescher, and hence they insist that in accordance with the terms of this third paper Mr. Huckestein was bound to construct the whole incline in accordance with the directions of the company's engineer, and that it has been so done. Mr. Huckestein has constructed it as directed by the company's engineer, and they say that that is an end of the case.

But the plaintiff claims, and this I take it, gentleman, is a

question for your determination under the evidence, that that modification only applied as to the one pier, and that it was in point of fact not on the Swan property, and that although it did modify the location of the sill of the first trestle, yet they could have constructed the balance of the incline through the Swan property in accordance strictly with this proposition of Mr. Huckestein, and hence I say this is for you to determine. [If you find that this modification, made in accepting Mr. Huckestein's proposition, so changed the character of the whole construction that it could not reasonably be constructed in accordance with the proposition as originally made, then Mr. Huckestein cannot recover here because he is remitted then to the direction of the company's engineer. But if you find that although the location of the first sill or trestle was changed by that acceptance they could still have constructed the balance under the original proposition, then they should have done so, and you will then consider further the questions that will be submitted to you.] [3]

[The defendant company says not only did this modification change the whole construction of the line, but that as tending to show Mr. Huckestein's acceptance of the modification for the construction of the whole line, that this property belonged to him, that he knew its lay, and knew that it would be impracticable to construct the incline in any other way than it was constructed.  They further say that the stakes that were placed there by the engineer he saw, and did his work of excavating in accordance with them.  They further say that the plans which showed the excavation that was necessary for the plane, as it is constructed, were seen by Mr. Huckestein, and that he accepted the doing of the work under those plans, and knew what they were, and that he is concluded thereby.  Now, if you should find that to be the case, and that Mr. Huckestein accepted the modification, and did the work in accordance with the direction of the company's engineer, knowing where the stakes were placed by him, and knowing the plans, in other words, accepted the modification of the contract, then he is concluded thereby and your verdict should be for the defendant company.] [4]

Verdict and judgment for plaintiff for 6¼ cents.  Plaintiff appealed.

*Errors assigned* among others were (3, 4) above instructions, quoting them.

*W. B. Rodgers*, *J. H. Beal* with him, for appellant.—The entire contract—the proposition, and defendant's acceptance—was in writing, and its construction therefore was for the court: Duffield v. Hue, 129 Pa. 94; Rapp v. Rapp, 6 Pa. 45.

It was especially the duty of the court to instruct the jury as to the meaning of the receipt, because it was produced in connection with the bill, the two papers were attached together, and it was shown that the receipt was given in consideration of the payment of the bill and had no reference to anything else : Rapp v. Rapp, 6 Pa. 45; Grumley v. Webb, 44 Mo. 444; Jackson v. Stackhouse, 13 Am. Dec. 514.

*J. S. Ferguson*, *E. G. Ferguson* and *George P. Hamilton* with him, for appellee.

PER CURIAM, January 6, 1896 :

The learned court below gave to the plaintiff every possible opportunity to recover before the jury that can be conceived. There was no provision in any of the correspondence, or in the contract as signed, or in the annexed specifications that gave an absolute right to the plaintiff to have any earth excavation whatever. But there was positive provision that all the work, including excavation, should be done, "according to the directions and under the supervision of the engineer in charge of the construction of said incline." As no excavation, for the loss of which the present action is brought, was directed by the engineer it is difficult to conceive upon what rational basis the claim can be sustained. Then too the receipt in full for every item of claim made after the work was all completed, and which was "in full settlement for all stone work and excavation, labor, material, etc., furnished in connection with the construction, etc., of the Nunnery Hill Incline Plane," may well have convinced the jury that all demands under the contract were fully adjusted, settled and paid. Nevertheless, notwithstanding this receipt in full, the court left it to the jury to say whether this extraordinary claim for loss of profits was intended to be included within it. This suit was not commenced until nearly

six years had elapsed after the work was all done, and in all that time this claim for alleged loss of profits had never been heard of. The only wonder is that the verdict was not absolutely in favor of the defendant instead of for six and a quarter cents in the plaintiff's favor. The claim is very stale, it is unsupported by any reasonable view of the testimony and in our opinion it is entirely devoid of merit. The verdict was a condemnation of it on its merits. We discover no error in the several assignments and they are all dismissed.

Judgment affirmed.