# Shepherd & Sons *v.* First National Bank of Wilkes-Barre, Appellant.

*Contract—Building contract—Ambiguity—Modification of specification—Acceptance of bid—Estoppel.*

Where the specifications of a building contract are ambiguous as to whether the roof shall be constructed of slag or of copper, and a contractor in submitting his bid in writing incorporates in his bid the words "Main roof estimate slag," the owner must either reject these words, or if he fails to do so, and accepts the bid without objection, and the acceptance is incorporated into the contract, he cannot afterwards object to the right of the contractor to construct the roof of slag, and not of copper.

Argued May 10, 1911.  Appeal, No. 98, Jan. T., 1911, by defendant, from judgment of C. P. Luzerne Co., Oct. Term, 1908, No. 1,194, on verdict for plaintiff in case of W. H. Shepherd & Sons v. First National Bank of Wilkes-Barre.  Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ.  Affirmed.

Assumpsit to recover the balance alleged to be due on a building contract.  Before GARMAN, J.

The facts are stated in the opinion of the Supreme Court.

The defendant presented the following points:

The contract, plans and specifications, being in writing, and there being no ambiguity in the language used in the same, which is open to explanation by parol evidence, the construction of the same is exclusively for the court. *Answer:* This point, in the form in which it is drawn, is denied.  We are of the opinion that the actions of the parties in connection with this proceeding, as represented, shows a certain ambiguity; and that, at any rate whether

there be ambiguity or not, the contract is between the parties and that the bid and acceptance in the form in which one made and the other accepted are read into the contract. [1]

The plaintiffs' bid so far as the same refers to slag estimate, under the terms of the contract, is no part of the contract and was not made a part of the same. *Answer:* That is denied. [2]

The contract taken in connection with the plan and specification calls for a copper roof over the "main roof," and was not an extra, but a portion of the work to be paid for and out of the cost of the construction of the building, namely, $112,983, and the plaintiffs are not entitled to recover. *Answer:* That is denied. [3]

Under all the evidence in the case the verdict should be for the plaintiffs for $207.54 the amount of the tender, without interest or costs. *Answer:* That is negatived. [4]

Verdict and judgment for plaintiff for $2,400.06. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*William S. McLean*, with him *William S. McLean, Jr.*, for appellant.

*S. J. Strauss*, with him *John McGahren*, for appellees.

Opinion by Mr. Justice Mestrezat, July 6, 1911:

This is an action of assumpsit brought to recover the difference between the cost of covering the main roof of the defendant's bank building with a slag and a copper roof.

At the request of the defendant's architect, the plaintiffs tendered a bid or proposal for the erection of a bank building for the First National Bank of Wilkes-Barre, Pennsylvania. The proposal was in writing and contained several paragraphs, each making a different and conditional

bid for the work to be done and the materials to be fur-
nished. By paragraph four, the plaintiffs offered to con-
struct the building for $112,983. In paragraph six, the
plaintiffs bid $663 on the clock frame, and stated that
they included cornice of granite in place of concrete for
alley in No. 4 estimate. This paragraph concluded with
the words: "Main roof estimate slag." A few days after
the bid, the secretary of the building committee of the
defendant bank advised the plaintiffs that the committee
had accepted their bid "as set forth in paragraphs four
and six of same." The parties entered into a contract for
the construction of the building in pursuance of the bid
and its acceptance, by the ninth article of which the owner
was to pay the contractor $112,983, "as stipulated in prop-
osition or paragraph four and $663 as stipulated in prop-
osition or paragraph six of the bid of contractors a copy of
which is hereto attached."

Among the specifications was the following: "The roofs
(excepting the front portion and main roof which is cop-
per), shall be covered with a five-ply slag covering of the
Warren-Ehret, or Owen D. Jones, manufacture." The
contract provided for three roofs on the building of differ-
ent altitudes, the front roof, the main roof, and a third
roof over the directors' room. During the construction of
the building a dispute arose between the contractor and
the owner in regard to the covering for the main roof.
The contractor claimed that the main roof was to be
covered with slag; the owner, that it was to be covered
with copper. It was agreed that the contractor should
furnish a copper covering and that the dispute should
be adjusted by an action of law. This suit was brought to
recover the difference between the cost of the slag and
copper covering of the main roof. The learned court
below instructed the jury to find a verdict for the plaintiffs
and the defendant has taken this appeal.

The defendant bank contends that the contract required
the plaintiffs to erect the building according to the plans
and specifications of the architect, and that the specifica-

tion above quoted required the main roof to be covered with copper. Its contention is that the front and main roofs were to be covered with copper and only the roof over the directors' room was to be covered with slag. It is further claimed by the defendant that the words, "main roof estimate slag," added to paragraph six of the plaintiffs' bid are without effect and do not change the specification providing for the roofing.

We do not agree with the defendant's contention. The specification in question was ambiguous and was so regarded by bidders and architects, even by Mr. Kipp, defendant's architect, who prepared the plans and specifications for the building. Mr. Shepherd, observing the ambiguity in the specification, attempted to communicate with the architect before he submitted the plaintiffs' bid but was unable to do so by reason of Mr. Kipp's illness. He then submitted to the architect through the latter's wife certain questions as to the proper construction of the specification but received no definite answer, the architect replying "you better figure on copper roof." This occurred on the morning the bids were to be submitted, and Shepherd testifies that he could not estimate the cost of a copper covering without a specification, and the time was too short for him to get a bid on a copper roof basis. Another bidder communicated with the architect on the subject in the same way. The first reply he received was that the main roof was to be of slag, but on his suggestion that the roof was too steep for slag, the architect replied again through his wife: "You better figure copper." Another architect was called and he testified that there was nothing on the drawings to show the character of the roof, and that as there were three roofs he would interpret the specifications to cover the portion over the main bank room with slag.

The specification being ambiguous and open to different interpretations, it was proper for the plaintiffs in submitting a bid to specify the character of covering of the main roof on which they made their estimate. This relieved

the bid of any uncertainty and distinctly notified the defendant and its architect of the construction placed upon the specification by the plaintiffs. This bid, as will be observed, was accepted by the building committee. The resolution adopted by the committee and communicated to the plaintiffs, accepted the bid as set forth in paragraphs four and six, the latter of which contains the notice to the owner that the plaintiffs made their bid on the basis of a slag covering for the main roof. The contract provides that the owner should pay the sums stipulated in the two paragraphs and copies of those paragraphs were attached to the contract. The bid was, therefore, made and accepted upon the distinct notice by the contractor to the owner that it was upon the basis of a slag covering for the main roof. The proposal distinctly notifies the owner that the roof is to be slag, the building committee accepts the proposal including this notice, and the contract specifically provides that the sums named in the two paragraphs, one of which contains this notice, will be paid by the owner to the contractor for the construction of the building. This is a construction of the specification providing for the material for the roofing by both parties, and neither is at liberty to reject it now. When the building committee accepted the proposal, including the plaintiffs' construction of the specification, and subsequently wrote it into the contract, both parties were bound by it, irrespective of the true interpretation of the specification. If the defendant intended the main roof to have a copper covering, it should have at once rejected that part of the proposal which disclosed the fact that the plaintiffs' bid was made on a basis of a slag covering. The bank not only did not reject this part of the proposal, but in terms accepted the sixth paragraph of the proposal which included the slag estimate. The sixth paragraph in its entirety became a part of the contract for the construction of the building. The bid of $112,983 was on the basis of a slag covering for the main roof, and it is manifest that if it had been made on the basis of a copper covering for

the roof it would have been increased by the difference between the cost of a slag and a copper covering. It was, therefore, the duty of the defendant bank when it received the proposal notifying it that the contractor had made his estimate on a slag roof to reject that part of the proposal and give notice that the roof was to have a copper covering. In the absence of such action by the bank, it cannot now assert that the bid for the work was made on the basis of a copper covering for the main roof.

The learned court below was right in directing a verdict for the plaintiffs, and the judgment entered thereon is affirmed.