[No. 13960.   Department One.   July 25, 1917.]

AUGUST WEIFFENBACH, *as Seattle Cornice Works,*
*Respondent,* v. BURNS LYMAN SMITH *et al.,*
*Appellants.*[1]

CONTRACTS—BUILDING CONTRACTS—DISPUTES — AMBIGUITY — PROV-
INCE OF UMPIRE.  A provision in a building contract that all disputes
shall be settled by the architect, whose decision shall be final, has
no application, where two sets of specifications were furnished for
the installation of ventilators, one for the masonry providing for
galvanized iron, and the other for carpentry calling for copper, and
the principal contractor, upon inquiry, instructed the subcontractor
to bid on galvanized iron, and during the progress of the work, in-
sisted upon copper and agreed to pay for the same as an extra; since
the dispute was over an ambiguity in the contract which the parties
could and did settle themselves before contracting.

SAME—BUILDING CONTRACTS—SPECIFICATIONS—EXTRAS.  In such a
case, the specifications requiring copper manufactured by the R. Co.
"and not elsewhere," do not apply, since the contract was made with
reference to galvanized iron in the other set of specifications, and
the principal contractor's agreement to pay for copper manufactured
by the subcontractor as an extra puts the burden upon him of set-
tling the dispute with the owner at his own cost.

Appeal from a judgment of the superior court for King
county, George H. Walker, Judge *pro tempore,* entered July
11, 1916, in favor of the plaintiff, in an action on contract,
tried to the court.   Affirmed.

*George R. Biddle* and *H. L. Morrison,* for appellants.

*F. C. Kapp,* for respondent.

CHADWICK, J.—The respondent was invited to bid on the
installation of certain ventilators and flashings for the L. C.
Smith Building, Seattle, Washington.   He was given two
sets of specifications; one for masonry, and one for carpentry
work.   The specifications were prepared by architects having
offices in Syracuse, in the state of New York.   The set of
specifications for masonry provided that the flashings and

[1]Reported in 166 Pac. 613.

ventilators should be of galvanized iron of the Burt type.
The set of specifications for carpentry provided that the flash-
ings and ventilators should be of copper, and of a kind manu-
factured by the Royal Ventilator Company of Philadelphia,
Pennsylvania.

The appellant, The Whitney Company, had its chief office
in New York City. The respondent inquired of its represen-
tative having charge of its work on the Smith Building as
to the meaning of the specifications, and which type of ven-
tilators he should bid on, and was told by him to bid upon
galvanized iron. The respondent accordingly filed a bid in
which he stated that his bid was for galvanized iron construc-
tion. In the progress of the work, the representative of the
owner objected to the galvanized iron and insisted that the
ventilators and flashings should be of copper. The respond-
ent testifies that it was then understood by and between the
representative of the principal contractor and himself that
he should proceed to put in copper construction of his own
manufacture and that the same would be paid for as extra
work. Ventilators of the Royal Ventilator type, but manu-
factured by the respondent, were installed. The work was
rejected by the agent of the owner as not being in accord with
the provisions in the specifications that the ventilators should
be manufactured by the Royal Ventilator Company of Phil-
adelphia, Pennsylvania. The appellants refused to pay for
the work done by respondent. Upon suit brought, a judg-
ment was rendered in the court below for the amount of his
demand.

It is insisted on the part of the owner and principal con-
tractor that the difference which has arisen between the parties
comes within the provision which is common to all specifica-
tions and contracts, that such disputes must be referred to
the architect for his decision, and which, being made, is final.

This court, in common with many other courts, has held
that, where parties contract, they may agree that disputes
arising as to the meaning of plans and specifications may be.

referred to an architect, and his decision shall be final; yet
that rule has no room for application here. The dispute out
of which this controversy arises arose prior to the time any
contract was entered into. The difficulty was understood by
the parties; they settled it for themselves; and contracted
with reference to it. An architect can settle disputes arising
during the progress of the work, but cannot vary, or make,
or unmake contracts which are not subject to construction.

To apply the rule contended for, would work positive in-
justice, for the controversy comes not out of a dispute but
out of an agreement. The two sets of specifications were pre-
pared by the architects and put in the hands of the respond-
ent by the principal contractor. Respondent had then as-
sumed no relation whatever to the owner. With the two sets
of specifications before him, he did the natural thing. He
asked the principal contractor, with whom he was dealing,
which set should control his bid on the ventilators and flash-
ings. He had a right to assume that all differences and am-
biguities arising in or out of the specifications had been set-
tled by the principal contractor when it made its bid, and to
rely upon its assurance. The law ought to presume, as be-
tween a principal contractor and a subcontractor, that the
principal contractor knows the true intent and meaning of
the specifications and has contracted with reference thereto.
If this be sound, it would follow that the principal contractor
should be held to the burden of settling, at his own cost, any
dispute subsequently arising between the principal contractor
and the owner or architect.

That part of the carpentry specifications upon which ap-
pellant relies is, "Ventilators shall be manufactured by The
Royal Ventilator Company of Philadelphia, Pa., instead of
those elsewhere specified." Importance is attached to the
words "instead of those elsewhere specified," but we think it
is not the legal privilege of the appellant to isolate this
phrase. The words are no more prominent in the one set
of specifications than are the words, "All ventilators shall be

of galvanized iron of the Burt type," in the other set of specifications.

Respondent made definite inquiry, and appellant should be bound by the answer which it made and upon which respondent, by the very written terms of his bid, fixed a price for his labor and material.

The words "instead of those elsewhere specified" should not be held to mean anything other than elsewhere specified in *this* set of specifications. Otherwise, a set of specifications being one of a number would be a trap for the unwary and a menace which even ordinary care and prudence could not guard against. A subcontractor would be the victim of the inefficiency, stupidity, or inexcusable carelessness of the architect, for the architect, in turn, could say, "It is true that you are the victim of my fault, but I am authorized by your contract to metamorphose my fault into a 'dispute' and compel you to answer for it."

The law, at its best, works much injustice, but it should never be so unless the injustice suffered by the individual is necessary—a vicarious sacrifice, as it were—for the common good.

Settlement by the parties, before signing, of ambiguities in a building contract has been sustained as within their right to control without bringing themselves within the umpire clause of the building contract. *Shepard & Sons v. First Nat. Bank of Wilkes-Barre*, 232 Pa. 649, 81 Atl. 715; *Snead & Co. Iron Works v. Merchants' Loan & Trust Co.*, 225 Ill. 442, 80 N. E. 237, 9 L. R. A. (N. S.) 1001; *Morgan v. Murdough*, 216 Mass. 502, 104 N. E. 455.

We find no error.

Affirmed.

ELLIS, C. J., MORRIS, and MAIN, JJ., concur.