[No. 14081.  Department One.  March 22, 1918.]

# W. L. Tribble *et al., Respondents,* v. Yakima Valley Transportation Company, *Appellant.*[1]

Work and Labor—Construction Work—Radical Change—Question for Jury. Whether a change in profiles for railroad construction work was so radically material as to entitle the contractor to extra pay is a question for the jury, where the change required the wastage of 40,000 yards of material over the tracks of another road at an expense of 51 cents per cubic yard.

Same—Radical Change—Quantum Meruit. Although a contract is let on a unit basis, with the right to make changes, if the engineer makes changes so radical as to materially increase the cost of the work and require the doing of an act not within the reasonable scope of the contract, a recovery therefor may be had upon *quantum meruit.*

Same. In such case, where the jury has decided that the parties contracted upon the profile staked out upon the ground, the court will not say, as a matter of law, that changes which made it impossible to do the work in the manner contemplated were not so radical but what recovery could be had on *quantum meruit* for the work done.

Trial — Verdict — Separate Items — General Verdict — Effect. Where there is but one cause of action upon *quantum meruit* for work done in addition to that called for in a railroad construction contract, a general verdict is not void for uncertainty in that it does not fix the amount allowed for the separate items pleaded, there having been no motion or demurrer on the ground of pleading distinct causes of action and no request for a special verdict; since a general verdict upon the general issue finds all essential facts in favor of the respondent.

Appeal — Review — Presumptions — Verdict. Where the court properly instructed the jury upon each item claimed, it will be presumed that a general verdict was based upon the testimony that would sustain it.

Trial—Verdict—Certainty. Where a verdict rests in mixed facts and opinion, or even estimates of engineers, absolute certainty is not essential.

Work and Labor—Performance—Decision of Umpire — Radical Changes. An umpire clause in a contract for railroad construction

[1] Reported in 171 Pac. 544.

work making final the decision of the engineer is limited to matters growing out of the contract, and does not include a claim on *quantum meruit* for work done under a radical departure from the contract.

Appeal from a judgment of the superior court for Yakima county, Grady, J., entered November 15, 1916, upon the verdicts of a jury rendered in favor of the plaintiffs, in an action on contract. Affirmed.

*A. C. Spencer, Richards & Fontaine,* and *C. E. Cochran,* for appellant.

*H. J. Snively,* for respondents.

CHADWICK, J.—Respondents are contractors engaged in railroad construction. They were awarded the contract to build a certain line of railroad for the appellant. The line extended from the city of Yakima through Selah Gap, through the town of Selah and into the Selah valley. The work was done, but the parties disagreed upon final settlement. Without reviewing the vast detail with which the record abounds, it may be said that the cause of action set up by respondents rests in allegations that, after the contract was entered into, it was so radically changed by the appellant as to furnish ground for a recovery upon a *quantum meruit* for the extra cost of the work and labor performed and for profits lost by reason of the omission of material items. Some of the things performed and done are alleged to have been made necessary by the change in plans, and to have been done under the direction and at the instance and requirement of the engineer in charge.

Briefly stated, respondents contend, that their bid was made upon a profile showing certain cuts and fills which, if carried out, would make what counsel calls a "balanced job," that is, the cuts would balance the fills, with a possible excess of waste material amount-

ing to about 2,000 yards; that, after the contract had been entered into, the engineer in charge furnished another profile map which had been made to conform to the demands of the Northern Pacific Railway Company, over whose right of way the line was to be constructed, and which fixed the tangent of the line at fifty-four feet from the main line of the Northern Pacific, and directed that the work should be done accordingly. It is insisted that this necessitated a change of the line to the south and west of about four feet; that, by reason of the character of the ground, which was a very steep hillside with outcropping basaltic rock, the wastage was very much greater than was contemplated by the parties when the contract was entered into; that it became necessary to waste the excess material over and to the north side.of the Northern Pacific Railway tracks; that this was accomplished by the erection and use of an overhead trestle; that the change in the work demanded, and the respondents did, by direction of the engineer in charge, waste approximately 50,000 yards across the Northern Pacific tracks, and "that the reasonable value of wasting such material over the grade and across the tracks of the Northern Pacific Railway Company and into the Yakima river was 51c per cu. yd., or $24,000."

It is also contended that, because of the change in the line of the road, appellant's engineer directed respondents to reduce the cuts from eighteen to sixteen feet; that this change prevented respondents from excavating blasted material with a steam shovel as they had contemplated, and compelled them to employ hand labor at an extra cost of $12,500.

Other contentions are that, by reason of the change, respondents were put to the expense of changing, maintaining and reconstructing the telegraph lines of the Northern Pacific Railway Company and the Western

Union Telegraph Company, to their damage in the sum expended, that is, $734.25; that they were required to pay out for flagmen, operators and watchmen for the protection of the Northern Pacific Railway Company the sum of $3,654.50; that they were required to tunnel under a rock crusher belonging to the state of Washington; that the amount of material excavated was 1,000 yards, which, under the contract, would have brought $840 to respondents, but, estimated as tunnel work, would have been as 100 feet at $45 per lineal foot, or $4,500. Respondents credit upon this item the sum of $840, and demand judgment for the balance of $3,660.

Respondents further allege that they were compelled, by reason of the change and the direction of appellant, to level 7,000 yards of material which had been wasted along the Yakima river and along the track of the Northern Pacific Railway Company; that the cost of leveling this material was fifty cents per cubic yard, or $3,500.

It is alleged that, because of the change of plans after the contract was entered into, a certain fill to the south of the Naches river was reduced from 17,427 cubic yards to approximately 5,000 cubic yards; that respondents' profit on making said fill would have been seven cents per cubic yard, but the elimination of the fill caused them loss and damage in the sum of $869.89.

Respondents sue for other items, but these were allowed on the admitted settlement between the parties and will not be further noticed. Respondents submitted claims covering these several amounts. The chief engineer allowed the sum of $8,622.36, being ten per cent on the final estimates allowed by the engineer, and the sum of $4,466.07 on other claims made by respondents.

Appellant denies that there were changes, except such changes as were provided for in the contract, or, if so, that the change was either material or radical. It insists that the profile upon which the bid was offered was no more than an approximation of the amount of material to be moved; that the legend on the profile:

"Note: The quantities, distribution and classification shown on this profile are calculated from slopes and estimated from surface indications. No provision is made for swell or shrinkage except in solid rock. The figures therefrom are entirely approximate and will be altered in accordance with the cross sections when taken, and also such changes made in distribution as may be found necessary or desirable."

is a part of the contract, and was notice to the respondents that the profile upon which the bid was made was not binding, but that the line of the road was subject to change at the will of appellant; that the profile was, and was so understood by the parties, to serve no other purpose than as a basis for estimating bids; that the contract provided in terms that changes might be made, and if such changes were made, they were made in accordance with, and to be paid for, under the terms of the contract.

That part of the contract particularly relied upon is as follows:

"The right is reserved by the railroad company to change the line of grade at any stage of the progress of the work. If such change should increase the amount of work to be done, such increased amount will be paid for at the prices herein provided for the class or classes of work so increased, and if, on the other hand, the work shall be diminished, no allowance will be made on account of anticipated profits on the portion which is eliminated. The quantities shown on maps and profiles, upon which the estimate of work to be done is based, are exclusively for the purpose of

preparing such estimate and canvassing the bids, and
are not represented as correct. They may be either
increased or diminished in amount or classification, as
the engineer shall determine, after the work is opened
up and during its progress or when the same shall be
completed.''

Appellant takes the further position that, if it be
held to be otherwise, respondents well knew, at the time
of making their bid, that appellant's road was to be
built fifty-four feet on tangent from the main line of
the Northern Pacific tracks, and that it was actually
so built by them in keeping with that understanding.

We shall pass the last proposition first. We are con-
vinced that it was understood by appellant and the
Northern Pacific Railway, at the time the contract was
entered into, that the new road should be constructed
fifty-four feet on tangent from the Northern Pacific
line, but we are not convinced that it was so understood
by respondents. Testimony is quoted by appellant
which might, if taken alone, indicate that one of the
partners so understood it. But when considered in its
setting, and in connection with other testimony, more
especially that of the engineer having the work in
charge, we are constrained to hold that the jury was
warranted in its finding that respondents contracted on
the basis of the first profile and with no present under-
standing that a change would be made that would ne-
cessitate the wastage of any material over the Northern
Pacific Railway tracks. We are not unmindful of the
charge that the testimony of the engineer, who is not
now in the employ of appellant, is unreliable and con-
tradictory of itself, but the weight of the testimony and
the credit of the witness were all matters for the jury.
The material inquiry is not whether the engineer, who
was a witness for the respondents, knew, or ought to
have known, of the demands of the Northern Pacific

Railway Company, but whether he brought that knowledge home to the respondents.

Upon the next proposition, we think the question whether the change was so radically material as to give to respondents a right of recovery for the work done by them in excess of that which would be required under the contract was a question of fact for the jury.

It is the contention of the appellant that the contract was let upon a unit basis; that it provides in terms that the company shall have the right to make changes, the extra work to be paid for as agreed upon, and if work is omitted, "no allowance will be made on account of anticipated profits on the portion which is eliminated." Counsel cite Wait on Engineering and Architectural Jurisprudence, § 577.

"As a general rule it is well settled that deviations and changes in the plans of a structure will not imply abrogation or abandonment, whether the contract provides that such deviations and changes may be made or not."

They also cite the following cases: *Wilkin v. Ellensburgh Water Co.*, 1 Wash. 236, 24 Pac. 460; *Kieburtz v. Seattle*, 84 Wash. 196, 146 Pac. 400; *McGrann v. North Lebanon R. Co.*, 29 Pa. St. 82; *Dorsey v. McGee*, 30 Neb. 657, 46 N. W. 1018; *Bozarth v. Dudley*, 44 N. J. L. 304, 43 Am. Rep. 373; *Williams v. Chicago, S. F. & C. R. Co.*, 153 Mo. 487, 54 S. W. 689; *Huckestein v. Nunnery Hill Incline Plane Co.*, 173 Pa. St. 169, 33 Atl. 1108; *Beers v. North Milwaukee Town Site Co.*, 93 Wis. 569, 67 N. W. 936; *Wells v. Milwaukee & St. P. R. Co.*, 30 Wis. 605. The contention being that the principal object of making a contract on a unit basis is to guard against a charge of abrogation or abandonment, and that, if such changes are not to be paid for or deducted from the contract according to its terms, the

right of contract is lost to the builder and he is made subject willy-nilly to a suit upon a *quantum meruit.*

Respondents contend that, where a change is made that is so radical as to materially increase the cost of the work and compel the doing of something not within the reasonable scope of the contract, a recovery may be had upon a *quantum meruit. Kieburtz v. Seattle, supra; Atwood v. Smith,* 64 Wash. 470, 117 Pac. 393; *Meacham v. Seattle,* 69 Wash. 238, 124 Pac. 1125; *Mc-Master v. State,* 108 N. Y. 542, 15 N. E. 417; *Henderson Bridge Co. v. McGrath,* 134 U. S. 260; *Salt Lake City v. Smith,* 104 Fed. 457; *Seymour v. Long Dock Co.,* 20 N. J. Eq. 396; *Wolff v. McGavock,* 29 Wis. 290; *Cincinnati Southern R. Co. v. Cummings,* 6 Ky. Law 441, 13 Ky. Opin. 126; *Wood v. Fort Wayne,* 119 U. S. 312; *Chicago & Great Eastern R. Co. v. Vosburgh,* 45 Ill. 311; *Wright v. Wright,* 11 Ky. 179; *Dubois v. Delaware & Hudson Canal Co.,* 4 Wend. (N. Y.) 285; *McCormick v. Connoly,* 2 Bay (S. C.) 401; *Gammino v. Inhabitants of Dedham,* 164 Fed. 593; *Cleveland, C. C. & St. L. R. v. Moore,* 170 Ind. 328, 82 N. E. 52, 84 N. E. 540; *Erfurth v. Stevenson,* 71 Ark. 199, 72 S. W. 49; *Boody v. Rutland & B. R. Co.,* 24 Vt. 660; *Philadelphia, W. & B. R. Co. v. Howard,* 54 U. S. (13 How.) 307.

Respondents further contend that their right of recovery rests in the direct authorization of the president of the company and its engineer, and that, out of these authorizations, an express promise to pay a reasonable price or damages arises independent of the contract.

The cases cited are generally denied or distinguished by counsel on either side. It would unduly extend our opinion to follow their discussion. The real merit of the case is whether the change in the line of the railway made it necessary for the contractors to waste excess material amounting to approximately 40,000 cubic yards in a way not contemplated by the contract, and

which, if no change had been made, might have been used to make fills—balance the job—to their cost and damage in the sum of fifty-one cents per cubic yard, and the extra cost of leveling this waste material to conform to the demands of the Northern Pacific Railway Company.

We cannot say, as a matter of law, that the thing done was within the reasonable contemplation of the parties at the time the contract was entered into, or that it is embraced within the scope of the contract as written. It will be noticed that both sides rely upon *Kieburtz v. Seattle, supra.* Appellant quotes that part of the opinion pertaining to the first item, and respondent relies upon our discussion of the second item. The one declares the general rule applying to contracts let upon a unit basis that,

"Where the contract price is based on a unit system, we cannot think a right of recovery can be grounded upon a loss caused by reason of the performance of work required by the contract merely because a change in the plans of the work increased the number of units of work of one class and decreased the number in another; especially where, as in the present cases, the city is empowered by the contract to make 'variations in the quantity of the work to be done.' "

The other as emphatically declares the exception,

"That the engineer in charge cannot make such radical and material changes in the plans of the work as would result in material loss or damage to those participating in or affected by the performance of the contract."

The jury having found that the change made was beyond the intent of the contract, it seems clear to us that the case falls within the discussion of the second item. It is also saved under the suggestion made in the first part of the opinion, "They [appellants] do not contend that the city ordered or required them to

perform any work not designated or contemplated by the contract." The court held in the *Kieburtz* case that the work, in so far as the first item was concerned, was designated and contemplated by the contract. It is upon the contention that the work done was not contemplated by the contract that respondents rest their case, and to again refer to the discussion of the second item in the *Kieburtz* case: "It is our opinion that it is a radical and material change such as the city [company] had no right to cause to be made without rendering itself liable to the contractors for the loss it caused them."

We cannot say that the changes were either minor or inconsequential, or that they were necessary to overcome engineering difficulties arising in the progress of the work. The jury has said that the parties contracted upon the profile and as the line was staked out on the ground; and when the company, by its changes, made it impossible for the contractors to do the work in the manner in which it might have been done, and put them to the expense of wasting material instead of using it to fill excavations, it made itself liable to pay the reasonable cost of the extra work.

Respondents asked judgment for $60,491.99. The jury returned verdicts as follows:

"We, the jury in the above entitled cause, find for the plaintiffs and assess the amount of recovery in the sum of thirteen thousand and eighty-eight dollars & 43/100 ($13,088.43/100) dollars."

"We, the jury in the above entitled cause, find for the plaintiffs and assess the additional amount of recovery in the sum of $25,780 twenty-five thousand seven hundred and eighty dollars."

"Question: Did the defendant by its president, Mr. C. N. Richards, on or about April 11th, 1913, offer to pay to the plaintiffs, or either of them, the ten per cent of the estimates retained under the contract amounting

to the sum of $8,622.36, together with the sum allowed by Mr. Boschke, amounting to $4,466.07 or a total of $13,088.43? Yes.''

The first verdict was returned under the direction of the court, and is made up by an allowance of the $8,622.36 on final estimates and the $4,466.07 allowed for extra work. The second verdict was the amount allowed by the jury under the direction of the court to fix the additional amount to which respondents were entitled, if any, and the third verdict was taken as a special verdict and is self-explanatory.

While it would have been the better practice to have directed the jury to return a verdict for such amount as it found to be due, but in no event for a sum less than $13,088.43, the same result follows from the practice adopted by the court.

Assuming that there was a material change in the contract, and granting that respondents are entitled to recover upon the general issue, and that there could be no legal recovery upon some of the items claimed by respondents, appellant contends that, if there was no sufficient evidence to sustain any one or more of the items submitted, or if no cause of action could be stated on one or more of them, the verdict being a general verdict, it is impossible to tell what the jury allowed on each item, or on what items it found for respondents, and for that reason the verdict must fall.

It is quite generally held that, where two inconsistent causes of action are set up, and one is sustained by the evidence and the other is not, a general verdict will not be allowed to stand, the theory being that the court cannot say whether the jury based its verdict upon the cause sustained or the one not sustained. In such cases the verdict is held void for uncertainty. At common law a motion in arrest of judgment would lie. 2 Tidd's Practice, p. 894.

But here there is but one cause of action. It grows out of a change in the contract made by the parties. From that change certain damages resulted to respondents. For convenience in pleading, they have set these damages up as separate items under one cause of action. No objection was made that causes of action had been improperly joined or that they should be separately stated, so while each item became an issue of fact, the case went to the jury upon a general issue. It was within the province of the jury, indeed, it became its duty, to measure the testimony going to each item. It necessarily rejected some wholly or in part, for the recovery is far below that demanded or which might have been returned in favor of respondents. All presumptions are to be indulged in favor of verdicts. No motion to separately state causes of action was made. No demurrer was directed to any item of the complaint, and no request for special verdicts upon the several items was made in the court below. In the absence of either motion or demurrer, or a request for special verdicts, we must presume that appellant was willing to rest its case upon the general issue tendered in its pleadings, that is, whether there had been a change in the contract or whether, under the contract, it had a right to make the changes, and not upon a plea of uncertainty, if it should transpire that a general verdict unfavorable to it was returned. Appellant had, at the trial, every weapon which it now employs, and it might have avoided the present situation by invoking the remedies afforded by statute, as well as a practice sanctioned at common law and generally recognized by statute. *Walker v. Southern Pac. R. Co.,* 165 U. S. 593. Nor does the record show that the form of verdict was objected to when it was received and it was still within the power of the trial judge to save the question

now presented and avoid the consequence which is now complained of.

To avail itself of the rule, appellant must assume that it has been charged upon two or more distinct and inconsistent causes of action. Thus treated, appellant is not now in position to take advantage of the objection. The improper union of several causes of action is made a ground of demurrer under Rem. Code, § 259, and if no objection be taken in the manner provided by law, § 263, the objection is waived. By joining upon the general issue, appellant was content to treat the action as one upon a general cause of action resting in breach of contract, and cannot, upon motion for a new trial, urge a position which can only be sustained by treating the several items of damage as independent causes.

"The verdict in this case being general, found all the essential facts and issues in favor of appellee, and all reasonable presumptions and intendments must be made to sustain it." *Central Union Tel. Co. v. Fehring,* 146 Ind. 189, 45 N. E. 64.

"It is a settled rule [in England] that if the same count contains two demands or complaints, for one of which the action lies, and not for the other, all the damages shall be referred to the good cause of action, although it would be otherwise if they were in separate counts." *Doe v. Dyeball,* 8 B. & C. 70.

Although this rule may seem technical, it is, as said in *North Central R. Co. v. Mills,* 61 Md. 355, supported by very high authority.

In the state of the record, the verdict being for respondents upon the general issue of a radical change in the work, it is certain that they are entitled to recover upon some items, if not upon all, and appellants having passed a demurrer, and not having asked for special verdicts upon the several items, and there being foundation in law and ample testimony to sustain the verdict upon the two items of wasting material over

the tracks of the Northern Pacific and leveling it, we think there is no sound reason why it should not now be intended that the verdict is supported by the actionable items rather than upon those which may admit of doubt or discussion.

Moreover, the court instructed the jury upon each item to the effect that, unless they found from the evidence that a change had been made with reference thereto which substantially extended the obligation of the contractors beyond the scope and intent of the contract, they should find for appellant. This being so, we are not without authority in our own reports for indulging in the presumption that the jury rejected all inconsequential changes and those which were within the right of appellant to make, and based the verdict upon changes which the testimony would sustain as radical. *Miller v. Eastern R. & Lum. Co.,* 84 Wash. 31, 146 Pac. 171.

The largest claim of the respondents, and the one upon which the verdict must in the main rest, is the one for carrying the excess waste over the Northern Pacific tracks. For the work of excavating and blasting, respondents were allowed eighty-four cents per cubic yard. They alleged that the reasonable value of carrying the waste, over the contract price, was fifty-one cents. It is complained that the testimony of respondents to sustain both the amount of waste and the cost of moving it is so vague, conjectural, and uncertain that it will not support a verdict. Measurements and estimates were made by both parties, and other evidence of less convincing character was introduced by respondents. The jury was warranted in coming to some conclusion. It evidently gave more weight to the testimony of respondents than that of appellants.

When verdicts rest in mixed fact and opinion, or even in estimates made by engineers, absolute certainty is

not essential.  Reasonable certainty is all that is re-
quired, for it is known that men who give opinions rea-
son from different premises, and engineers assume or
find a different basis for their conclusions out of the
same set of physical facts.

Nor do we think that it follows, because respondents
were allowed eighty-four cents for excavating, under
the contract, and were bound to waste excavated ma-
terial, or, to be plainer, to dispose of it at their own
cost within the contract price, that an allowance of
fifty-one cents for carrying it over and wasting it be-
yond the Northern Pacific tracks would result in a
double payment in degree, or at all.  Under the theory
of respondents, and they seem to have established it to
the satisfaction of the jury, appellant had done away
with the places where the excavated material would
have been wasted if the original plan had been adhered
to.

The recovery sought was for ''the reasonable value
of wasting said material from said grade across the
tracks of the Northern Pacific Railway Company and
into the Yakima river.''  No motion or demurrer was
directed to this item of the complaint.  It was met only
by a general denial.  Appellant stood upon its construc-
tion of the contract, the legal effect of the final estimate
by the engineer, and a plea of estoppel not now neces-
sary to be considered.  Requested instructions were
drawn upon the theory that appellant had a right to
change the plan; that there was in fact no change; and
that, if the change were made, it was not a radical de-
parture from the original plans.  No request was made
for a credit, or that the jury consider the difference in
cost.  The issue was clear cut, win or lose, upon the re-
spective theories of the parties.  The jury was so di-
rected that it could not evade or confuse the issue.  It
found that the line had not been built as it had been

staked upon the ground, and that the cost of wasting the excess material was not within the contemplation of the parties at the time the contract was entered into.

Under this state of the record, we do not see our way to overturn the case upon a consideration to which the attention of the trial judge and jury was not invited. We must presume rather that the jury was mindful of the written contract and gave no more than the reasonable cost of wasting the material, over and above the cost of the work which would have been necessary if the original plan had been adhered to.

The claims of respondents were all submitted to Mr. Pitman, who had charge of the work. Before he had acted upon them, a Mr. Boschke was appointed chief engineer. The latter, after the lapse of some time during which negotiations and correspondence were carried on, finally made the awards hereinbefore referred to. His decision was put in writing after this case had been begun. The question whether Mr. Boschke could make the award, the difference having been submitted to Mr. Pitman, is raised. But we think it unnecessary to decide the question whether an award must be made by the engineer or architect to whom the dispute is submitted, or by the one in charge when the decision is made.

The contract provides:

"It is mutually agreed between said parties that to prevent or settle all disputes or misunderstandings between them in relation to any of the stipulations contained in this agreement, or their performance by either of said parties, that the engineer shall be, and is hereby made, umpire to decide all matters arising or growing out of this contract.

"It is further agreed and expressly understood that the decision of the engineer on any point or matter touching this agreement shall be final and conclusive between the parties hereto, and each and every of said

parties waives any and all right of action, suit or suits, or other remedy, in law or equity, under this contract, involving decisions made and to be made by the engineer.''

Provisions of this character, when contained in building contracts, have been readily sustained by the courts, but they are never extended beyond their terms. The power of the architect to act as a final arbiter is limited to the settlement of such matters as arise in, or grow out of, the contract. The premise of all the reasoning to which courts have resorted to sustain these stipulations is that the architect may decide what is within an admitted contract, but we know of no cases holding that an engineer or architect may, under such a provision, decide what the contract is, or, as in this case, defeat by his certificate the well-established principle that a radical departure from a contract releases the parties from its obligations and leaves them to their remedies and defenses under the law of *quantum meruit* or *quantum valebat.*

If the contract be admitted, the certificate of the engineer, as to all matters going to the meaning of terms or nonperformance, may be final, but where the suit is not upon the written contract, but upon a *quantum meruit* arising out of a departure so radical as to be in legal effect a new contract, the umpire clause will not be held to bar a resort to the courts by an aggrieved party.

To hold that the certificate of the engineer is final and conclusive upon the parties would be to hold that there had been no departure from the original contract contrary to what seems to us to be an evident fact; a fact confirmed by the verdict of the jury. It would be to hold that it is within the power of an engineer, under an umpire clause, to determine the legal rights of the parties, for the certificate of the engineer was

drawn under the theory, and is now depended upon to sustain the position of the appellant, that the right of the parties rests in the original contract. That an engineer or architect cannot determine the legal rights of the parties under a contract, or bind them to the performance of a written contract in the event of a radical departure, is well settled.

"When it is established that a contract may be abandoned, and a suit upon a *quantum meruit* or *quantum valebat* be maintained, it follows that this provision in regard to the persons selected to decide on the compliance with its specifications, is of no avail as a defense. Their testimony stands on the same ground as that of other witnesses." *Yeats v. Ballentine,* 56 Mo. 530.

See, also, Elliott, Contracts, § 728; *King Iron Bridge & Mfg. Co. v. St. Louis,* 43 Fed. 768, 10 L. R. A. 826; *G., H. & S. A. R. Co. v. Henry & Dilley,* 65 Tex. 685; *McAvoy v. Long,* 13 Ill. 147; *Alton, M. C. & N. A. R. Co. v. Northcott,* 15 Ill. 49; *Atlanta & Richmond Air Line R. Co. v. Mangham & Prickett,* 49 Ga. 266; *Scott v. Parkview Realty & Imp. Co.,* 241 Mo. 112, 145 S. W. 48; and, to the same effect, *Atwood v. Smith,* 64 Wash. 470, 117 Pac. 393; *Weiffenbach v. Smith,* 97 Wash. 391, 166 Pac. 613.

In cases where the architect's certificate would otherwise be held to be a prerequisite to the bringing of a suit, it has been held that an abandonment or radical departure will overcome the umpire clause of the contract. It was so held in *Sweatt v. Bonne,* 60 Wash. 18, 110 Pac. 617, where reliance was put upon a contract and apt authority cited to sustain the position of the owner, but the court held:

"These decisions would seem to support this contention made in behalf of appellants, if this was an action to recover a balance due upon the first contract only, and the building had not been so changed by the

other contracts and the extra work as to become a
building very materially different in kind and struc-
ture from the building originally contracted for.   By
these changes the cost of the building was increased
more than one-half and its size was practically doubled.
We think that this is not the building contemplated in
the original contract, and the architect was not, by
agreement of the parties, made the final judge of its
completion.   Both of the later contracts, which resulted
in the building being so changed as to become a sub-
stantially different building, are silent upon the sub-
ject.   Whatever the authority of an architect may be
as an agreed arbiter between an owner and a contrac-
tor, the law will not regard the owner bound by a de-
cision of the architect, except in so far as the owner
has unmistakably agreed to be bound.''

This rule is noticed by Clark in his Architect, Owner
and Builder Before the Law, at page 177:

''Where a contract partly executed is abandoned by
agreement of the parties, or by the fault of one of
them, or where such alterations and changes have been
made as to obscure totally the original agreement, it
sometimes happens that the contract is treated by the
court as no longer existing, and the builder is held to
be entitled to recover *quantum meruit* for his work and
materials; that is, what they can be proved to have
been really worth, without regard to the contract price
for them.   In such a case, it becomes important to
know whether it is still necessary to produce the archi-
tect's certificate, in order to recover payment on the
new basis.   The law appears to be that it is not neces-
sary, in such cases, to produce the certificate.''

See, also, *Dinsmore v. Livingston County,* 60 Mo.
241; *Davis v. Badders & Britt,* 95 Ala. 348; Elliott,
Contracts, § 3771.

We can see no difference between the cases cited and
the case at bar.   If the action is not upon the written
contract, but upon a *quantum meruit* or *quantum vale-
bat,* it would follow that the certificate of the engineer

would be no more than an opinion and would stand upon no higher ground than the opinion of other witnesses equally competent.

Our holding is that respondents are not concluded by the findings of the chief engineer.

Appellant makes many assignments of error going to instructions given and refused, but they all rest in appellant's theory of the case. This being rejected as without merit, it will be unnecessary to extend this opinion with a discussion of them.

Affirmed.

ELLIS, C. J., MAIN, and MOUNT, JJ., concur.