HAMMOND v. BEESON *et al.*, *Appellants.*

In Banc, November 14, 1892.

1. **Contract:** GRADING RAILROAD: QUESTION FOR JURY. Where defendants having contracted to build a railroad gave plaintiff an oral subcontract to grade certain sections, and defendants were unable to have the work ready for plaintiff at the time designated because the railroad company had not fixed the grade, *held* in an action by plaintiff for damages for breach of the contract that it was a question for the jury whether the contract was dependent upon the railroad company establishing the grade in time.

2. ———: ———: MEASURE OF DAMAGES. The plaintiff was entitled to recover not alone for loss of profits on his contract but for the reasonable value of the services of teams and workmen while idle and for the necessary incidental expenses, where the evidence showed that he was ready to begin work at the time specified, and that by reason of defendant's promises he was kept in idleness for some time with his teams and workmen and then informed he could not do the work.

3. ———: ———: QUESTION FOR JURY. Plaintiff having remained idle for two days after defendants had notified him he could not do the work, the question how long he was necessarily kept idle was for the jury.

4. ———: ———: EVIDENCE. All telegrams and letters exchanged between the parties in reference to the contract were admissible in evidence, but not, however, a letter from plaintiff to defendants after the agreement had been entered into, informing defendants of plaintiff's understanding that the work was to be ready at a certain time, as this was but a declaration in his own interest.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

REVERSED AND REMANDED.

*R. O. Boggess* and *Milton Moore* for appellants.

(1) The objection to any evidence ought to have been sustained. The petition states a specific contract and a breach thereof. The particular damages set out

and sought to be recovered are not logically or lawfully
predicable of such a breach of such a contract.    (2)
*First.*  The first instruction given in behalf of the
plaintiff is wrong in these particulars, viz.:   There was
no evidence of any agreement between the parties that
the road should be ready for plaintiff by September 1,
or that he was notified to be on the ground by that
date.   *Second.*   The instruction is further objection-
able, because it embraces a conclusion of law, as to
whether or not "under the contract the plaintiff took
the risk of the work being ready by September 1," was
submitting a conclusion of law to the jury.   *Hickey v.
Ryan*, 15 Mo. 62; *Hunt v. Railroad*, 75 Mo. 252; *Cape
Girardeau Co. v. Harbison, Adm'r*, 58 Mo. 90.   The addi-
tion of the words, "as declared in other instructions,"
did not cure the defect.   *Third.*   The instruction is
misleading, and does not fully submit the issues pre-
sented by the pleadings and evidence.   *Bank v. Loner-
gan*, 21 Mo. 46; *Belt v. Goode*, 31 Mo. 128; *Greer v.
Parker*, 85 Mo. 107.   (3)   The second instruction
given in behalf of the plaintiff was objectionable, as
follows:   *First.*   There was no evidence tending to
prove that the defendants agreed that the work should
be "surveyed and staked out" and ready for grading
by September 1, or that plaintiff was notified that it
would be ready for him at that time.   *Second.*   There
was no evidence that Hammond's men and teams were
kept in idleness for the space of thirty days.   *Third.*
There was no evidence of any expenses "actually" or
"necessarily" "spent" by the plaintiff for the hire of
his men and the moving of his "outfit."   *Fourth.*   The
instruction is misleading and assumes contested facts
to have been proven.   The objectionable language is
as follows:   "And, in estimating his damages, you may
allow such reasonable value as you believe is shown by
the evidence for the services of plaintiff's teams and

men, during the time they were so kept idle on account of defendant's failure to provide work as he had so contracted to do." *Sawyer v. Railroad*, 37 Mo. 241; *Meritt v. Given*, 34 Mo. 98; *Moffatt v. Conklin*, 35 Mo. 453. *Fifth.* The rule as to damages embraced in this instruction is erroneous. At the time Hammond left the line of work it had not been "cross-sectioned," but this was afterwards done, and the work performed by others, hence, the number of "yards" in the five sections could have been ascertained *(Id certum est quod certum reddi potest)*, and the amount thereof computed. *Pond v. Wyman*, 15 Mo. 175; *Dean v. Ritter*, 18 Mo. 182; *Ferry Co. v. Railroad*, 73 Mo. 389; *Park v. Kitchen*, 1 Mo. App. 357; *Hayward v. Fitzgerald*, 50 Mo. 516; *Fox v. Harding*, 7 Cush. 516. (4) The court erred in refusing to give instructions numbers, 1, 2, 3, 4, 5, 6 and 9 asked by the defendants. (5) The court erred in permitting plaintiff to read his own letters of August 12 and 26. They were not only incompetent and irrelevant, but open to objection of making testimony in his own favor. (6) The finding of the jury was against the evidence in the matter of damages.

*Hollis & Hamner* for respondent.

(1) The petition is good. *Moore v. Mountcastle*, 72 Mo. 605. (2) The first instruction given for plaintiff is not erroneous as claimed by appellants. (3) The second instruction is also correct. *Moore v. Mountcastle*, 72 Mo. 605; *Liebke v. Methundy*, 18 Mo. App. 143; *Shiver v. Sischert*, 23 Mo. App. 275; *Nance v. Metcalf*, 19 Mo. App. 183; *Gaty v. Sack*, 19 Mo. App. 470. (4) The court did not err in refusing defendants' instructions; they were all faulty. (5) So the court rightly admitted in evidence defendants' telegrams. *Morse v. Diebold*, 2 Mo. App. 163; *Howell v.*

*Howell,* 37 Mo. 124; *Shirts v. Overjohn,* 60 Mo. 305; *Schlicker v. Gordon,* 19 Mo. App. 479.   (6)   The rule as to the measure of damages was proper.   *Moore v. Mountcastle,* 72 Mo. 605.   The rule contended for by appellants in the case at bar would be highly improper and purely speculative.   *Lewis v. Ins. Co.,* 61 Mo. 534; *Hughes v. Wood,* 50 Mo. 350; *Saunders v. Brosius,* 52 Mo. 350; *Clemens v. Railroad,* 53 Mo. 366; *Kirkpatrick v. Downing,* 58 Mo. 40; *Wilson v. Wiel,* 67 Mo. 399; *C. M. & M. Co. v. Clark,* 32 Mo. 308.

MACFARLANE, J.—Plaintiff sued for special damages for breach of an alleged contract to grade for defendants five miles of railroad in Rush county, Kansas.

The petition charged that both plaintiff and defendants were contractors and builders of railroads; that in August, 1886, plaintiff and defendants entered into a contract by which plaintiff agreed to grade for them five miles of railroad, for which defendants were to pay ten cents per yard, and that work would be ready by September 1, 1886; that plaintiff moved his men, wagons, teams and implements to the place the work was to be done and was ready to commence on the first of September, according to contract; that defendants neglected to get the work ready for plaintiff at any time, and in that regard violated his contract.

Plaintiff claimed special damages as follows: "Defendants kept plaintiff's whole outfit there in idleness for thirty days at great expense and cost to plaintiff, viz.:

| | |
|---|---:|
| The wages of said teams were $3 per day each, amounting to.... | $3,240 00 |
| One foreman at $75 per month.............................. | 75 00 |
| One foreman at $60 per month...... .. ..................... | 60 00 |
| One stableman at $25 per month............................ | 25 00 |
| One cook at $40 per month................................. | 40 00 |
| One timekeeper at $35 per month.......................... | 35 00 |
| Personal expenses, including railroad fare..... ............ | 27 60 |
| Time and wages of teams and men going to said work, ten days at $108 per day.................... .................. | 1,080 00 |
| Total expense and loss to plaintiff....................$4,582 60 | |

The evidence tended to prove that defendants were contractors for building the road, and that the work could not be done until the railroad company which was building the road had established the line and staked off the grade for the contractors; and that plaintiff had notice of this and took his contract subject to the condition that the railroad company should have the work ready. This, plaintiff's evidence tended to disprove. Defendants' default was caused by the delay of the railroad company.

Objections were made to the petition and to the admission of evidence thereunder.

At the close of plaintiff's evidence, and also at the close of all the evidence, an instruction in the nature of a demurrer to the evidence was asked by defendants and refused by the court.

Two instructions were asked by plaintiff, both of which were given. The *first* is only open to some verbal criticism which could have done no harm to defendant, and will not be noticed. The *second*, to which serious objection is made, was as follows:

"If the jury believe from the evidence that the defendants, or either of them, in behalf of both, contracted and agreed with the plaintiff to do grading near LaCrosse, Kansas, and that said work should be surveyed and staked ready for grading by September 1, 1886, and notified plaintiff to be on the ground ready for work about September 1, 1886, and you further find that pursuant to said contract and notice to come the plaintiff moved his teams and men from Osage City, Kansas, to said work, and reported at the time stated ready for work, and was kept in idleness for the space of thirty days by reason of a failure on the part of defendants to provide the work as contracted, then the plaintiff is entitled to recover; and in estimating his damages you may allow such reasonable value as

you believe is shown by the evidence for the service of plaintiff's teams and men during the time they were so kept idle on account of defendants' failure to provide work as he had so contracted to do. Also all reasonable expenses actually and necessarily spent by plaintiff for the hire of his men and moving of his outfit as you may believe from the evidence is just and right, not exceeding the amount claimed in the petition.''

Judgment was for plaintiff, and defendants appealed.

I. While the evidence was quite conflicting, and in some particulars very unsatisfactory, we are of the opinion that the facts disclosed tended to prove a contract between the parties, and a breach of it by defendants, and that the facts were sufficiently stated in the petition.

In an interview between plaintiff and defendants, on the twenty-third day of July, it became understood that the grading or part of it would be let out to subcontractors, at a uniform price of ten cents per yard. We do not think though that anything transpired, on this occasion, that would constitute a contract between the parties. They did, however, become advised, that plaintiff wished a contract, and that defendants were willing that he should have one.

On July 31, plaintiff wrote defendant Beeson, asking him if he could have five miles of the grading. On the third of August, Beeson answered: "By the time you can get your teams here, we will have five miles of work. You can move on to near LaCrosse, Kansas." Plaintiff, on the eleventh of August, notified defendant Selden that he took five miles, which fact was on that day telegraphed Beeson by Selden. On the twelfth of August, plaintiff notified Beeson by letter that the was advised that he was to get sections

commencing at 117, and that he understood the sections were all together. This information he must have received from Selden. No reply was made to this letter, and plaintiff had the right to rely on his information. Plaintiff testified that Beeson told him he was to have sections 117 to 121 inclusive, and the books of defendants showed that these sections had been assigned to him.

Defendants' superintendent Kelly met plaintiff's foreman Combs, on his arrival about the first of September, and informed him that sections 117 to 121 had been allotted to him, and told him, from day to day, that the work would be ready for him to commence, and, on the ninth of September, notified him to be ready to move to the work the next day, which Combs did, with his men, teams and implements. He remained there waiting until the eighteenth, when Kelly informed him that he could not get the grade staked and cross-sectioned and could give him no further promises. Plaintiff moved away on the twentieth.

If these facts were true, in our opinion, there was a complete contract, and a breach thereof, upon which plaintiff would have a right of action, unless there was an understanding and condition, that the time of the performance was dependent upon the railroad company getting the grade ready. There is no evidence of any default on the part of defendants, unless, by the unconditional terms of the contract, the default of the railroad company could be attributed to them. That, in our opinion, was a question for the jury, depending wholly upon the intention of the parties, to be gathered from all the facts and circumstances in the case.

If it was understood and known to both parties at the time of the negotiations that the performance of the work necessarily depended upon the action of the

railroad engineers, in establishing the grade, then we would have to presume that the condition, that the railroad company performed its part of the work, would be incorporated into, and become a part of, the contract. This presumption would have to be rebutted by proof that the parties had no intention of making such a condition a part of the contract. As the intention of the parties is to be determined from all the evidence, it should be ascertained by the jury upon proper instructions.

II.   The sufficiency of the petition and of the evidence thereunder to sustain the verdict and judgment can be considered in the determination of the propriety of the second instruction. If plaintiff is entitled to recover any of the items of damage specified, the petition will be good. In determining what items may be recovered, we will determine also whether the instruction is good or bad.

Defendants insist that, in a suit on an express contract as in this case, such special damages as are claimed under the petition cannot properly be allowed, and, upon the facts disclosed in the trial, the damages should have been limited to the loss of profit, if any, plaintiff could have realized by a performance of the contract.

It is impossible to lay down any rule of damages, for breach of contract, that can be justly applied to all cases of any particular class. Each case must, in a great measure, be determined upon equitable principles, upon the particular facts by which it is attended, the controlling principle being that the one suffering from the breach should be fully compensated for all losses sustained. Other rules are merely aids to that end.

It is a clear proposition, and one well settled by the authorities, that, where there is an express contract, the contract itself should furnish the basis for estimat-

ing the damages, if they can be ascertained thereunder with sufficient certainty. The contract price, in a contract of this character, would not be the reasonable measure of the damage, but the benefits plaintiff could have obtained, had he been permitted to perform the work at the contract price. The profits plaintiff expected to realize out of the contract were the real consideration that induced him to make it. These became a part and parcel of the contract itself, and to these he ought to be entitled. If the contract was terminated or performance prevented by the defendants, whether through inability or design, the purposes of plaintiff were defeated and the loss of profits sustained.

The profit was the full measure of his possible gain, if he had been permitted to complete this contract, without unreasonable delay or interference. If he performed no part of it and incurred no expense, all the damages he could justly demand would be the loss of the profits he could have realized. So, we understand the general rule of law, on the subject of damages for the breach of an express contract of this character, to be the difference between the contract price and the cost of performing the contract, if it can be ascertained with a reasonable degree of certainty. If the contract price is greater than the cost then there would be a profit, to which the contractor would be entitled; if less, then he would have made nothing by his contract, and can reasonably claim nothing on account of its breach. This rule is equitable and just and furnishes full and adequate compensation for all injury sustained. *Myers v. Railroad,* 2 Curtis C. C. 28; *Railroad v. Howard,* 13 How. 344; *Park v. Kitchen,* 1 Mo. App. 357; *Friedlander v. Pugh,* 43 Miss. 111; *Polsley v. Anderson,* 7 W. Va. 202; *Doolittle v. McCullough,* 12 Ohio St. 360; *Atkinson v. Morse,* 63 Mich. 276; *Fitzgerald v. Hayward,* 50 Mo. 517; 2 Sedgwick on Damages, p. 522; 1 Sedgwick

on Damages, secs. 25–34; *Masterton v. Mayor*, 7 Hill, 68; *Devlin v. Mayor*, 63 N. Y. 24.

Under this contract plaintiff was to perform certain labor at a specified price per yard. The number of yards and the expense of performing the labor, so far as anything to the contrary appears in the record, could have been ascertained with almost exact certainty, and then the profits could have been determined with sufficient accuracy to have fixed the measure of damages, according to the general rule before stated.

In the circumstances of this case, however, this rule would not give the full measure of plaintiff's damage. He was entitled to full satisfaction for all his losses. If he had been notified on his arrival at the place of performance that the contract was repudiated, or could not be carried out on account of the default of the railroad company, then the loss of the prospective profits should have satisfied all just demands. But plaintiff contends, and the evidence tends to prove, that he was, under the contract, to begin work on a particular day, and could not do so, and by reason of the promises of defendant from day to day, to have the work ready, he with his laborers, teams and implements was kept idle, and at an expense, for a number of days. The profits he would have received would not have compensated for this damage, nor was it included in it. If, at the end of twenty days' delay, plaintiff could have gone to work and completed the contract, he would have received the profits, if any were realized, but he would have lost by the delay whatever he could have earned on that contract during the time he was kept idle. To that extent the damages, by way of profits, would have fallen short of full compensation.

It is well settled, by authority, that when the contractor has incurred expenses, in preparation for the performance of the contract, he is entitled to recover,

if there should be a breach, not only the loss of profits, but also the necessary damages resulting to him from such expenses, if caused by the default of his employer. *Durkee v. Mott*, 8 Barb. 423; 1 Sedgwick on Damages, 457, note; *Allphin v. Working*, 24 N. E. Rep. 54; *Williams v. Oliphant*, 3 Ind. 272; *Pond v. Harris*, 113 Mass. 114; *Moore v. Mountcastle*, 72 Mo. 606.

In order to receive full compensation, plaintiff in this case would be entitled to recover the necessary losses incurred in preparation for the work, and, while waiting in idleness, with his laborers, teams and implements, if such idleness was enforced by the failure on the part of defendants to have the work ready according to the terms of the contract. Defendants had the right to put an end to the contract, at their will, being responsible for the damages necessarily resulting therefrom. When plaintiff was informed that he could not go to work, his contract was at an end, and his special damages also ended.

The manner adopted by the court of ascertaining the damage caused by the delay seems unobjectionable. The value of the teams and implements per day is a very fair test of what plaintiff could have earned, had he been at work. The expenses incurred in keeping and paying his foreman, stableman, cook and timekeeper were also proper items of damages, unless any of them would have been necessarily included in estimating the daily value of the teams.

We think there was error in the instruction fixing the time of plaintiff's enforced idleness at an absolute period of twenty days. The evidence shows that plaintiff arrived at the place fixed for the performance of the contract on the first day of September, and that he was notified on the eighteenth that he could not go to work. That would leave only eighteen days for which he could claim damages. It is true he remained until

the twentieth, but he had no right to do so, and thus accumulate damages. Some time may have been required in locating and preparing his camp and getting matters in order to begin work. Defendants agreed that work would be ready by the time plaintiff could get his teams there. There was some evidence tending to prove that plaintiff had another contract to complete before he could begin this one. Whether he finished his old contract sooner than defendants could reasonably have anticipated from information received from him, may have been a question in the case. We are, therefore, of the opinion that the question as to the length of time plaintiff was necessarily kept in idleness should have been left to the jury to determine under all the circumstances.

III. We see no error in admitting in evidence the letters and telegrams that passed between the parties in reference to the contract. It was proper to have all that passed between them before the jury, in order that all might be considered in determining the terms and conditions of the contract.

The letter written by plaintiff to defendant Beeson under date of August 24, 1886, after the contract had been made, should not have been admitted. In this letter he says: "My outfit, including hired teams, number sixty-seven, and you know what it costs to hold them idle, and my understanding from you was the work would be ready on my arrival which I trust will be the case." These were declarations of a party in his own interest, and should not have been read in evidence to the jury. A party is not allowed in that manner to make evidence for himself.

For the errors indicated the judgment is reversed and cause remanded. All concur, except THOMAS, J., who dissents.

THOMAS, J. (*dissenting*).—I do not concur in the foregoing opinion for the reasons given by me in my dissenting opinion in division 2, published in 15 S. W. Rep. 1000.