Argued October 12, reversed December 7, 1960

# MORRISON ET AL v. STATE HIGHWAY COMMISSION

357 P. 2d 389

*J. Robert Patterson,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General, Leonard I. Lindas and Charles Peterson, Assistant Attorneys General, Salem.

*George A. Rhoten,* Salem, and *John K. Kottkamp,* Pendleton, argued the cause for respondents. On the briefs were Rhoten, Rhoten & Speerstra, Salem, and Fabre, Collins & Kottkamp, Pendleton.

Before MCALLISTER, Chief Justice, and WARNER, SLOAN, GOODWIN and HOWELL, Justices.

HOWELL, J. (Pro Tempore)

Plaintiffs, construction contractors, sued the state of Oregon through the State Highway Commission for certain additional costs arising out of the construction of approximately five miles of highway in Wallowa county. Plaintiffs assert they are entitled to additional compensation because of unusual or unexpected conditions encountered during the construction of this highway within the purview of the "Changed Conditions" clause of their contract with the highway commission.

The case was tried by the court without a jury, and findings of fact, conclusions of law and judgment were entered in favor of plaintiffs. Defendant appeals.

The defendant for its first assignment of error claims the trial court erred in overruling its demurrer to the amended complaint and its objection to the introduction of evidence. The demurrer and objection to the evidence were on the ground the complaint did not state a cause of action.

In the amended complaint plaintiffs alleged in substance a written contract (incorporated by reference) with the defendant to construct 5.04 miles of highway in Wallowa county; that plaintiffs entered into performance of the construction contract; that flooding and inundation of the right of way occurred affecting the progress of the work; and that the flooding of the right of way was a changed condition within that provision in the contract. The complaint also alleged notice and demand for extra compensation and the denial thereof.

The "Changed Conditions" clause of the contract is as follows:

"Should the contractor encounter, or the engineer discover during the progress of the work, [1]

*subsurface and/or latent conditions* at the site materially differing from those shown on the drawings or indicated in the specifications, [2] *or unknown conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the plans and specifications,* the attention of the engineer shall be called immediately to such conditions before they are disturbed. The engineer shall thereupon promptly investigate the conditions, and if he finds that they do so materially differ, the contract may be modified by the engineer to provide for any increase or decrease of cost and/or difference in time resulting from such conditions." (Emphasis supplied.)

The contract between the parties also included the following as part of the "Special Provisions":

"In performing the work, the contractor will be held responsible for all damage to crops. The ditch changes shall be built, in so far as is practicable, during the time the farmers are not using water from the existing ditches. When the irrigation ditch changes are constructed during the irrigation season, they shall be constructed, in so far as practicable, before the existing ditches are closed or destroyed.

"* * * * *

"The contractor shall so arrange his work that the flow of water to the land will not be interrupted, and he shall cooperate with the users of the water to the greatest possible extent.

"* * * * *

"The contractor shall conduct his operations in such manner as will cause no interference with the flow of water in irrigation ditches and canals during the irrigation season. The contractor shall be liable for, and shall protect the State and the Federal Government against, any claims that may arise from any interruption of irrigation service caused by the contractor's operations or by his negligence."

It is noted that the plaintiffs alleged the flooding and inundation of the right of way from the irrigation resulted in a changed condition entitling them to additional compensation. The defendant asserts that the special provisions clause above mentioned provided for such contingency as the flooding and that the complaint does not state a cause of action. The special provisions quoted do not provide for a flooding of the right of way as alleged by plaintiffs. They merely state the time of construction of the ditch changes; that the contractor is responsible for damage to crops, will not interrupt the flow of water in ditches and will be liable for any claims caused by his interruption of irrigation.

■■ By alleging, in addition to the other charges, the flooding and inundation of the right of way was a changed condition within the language of that clause in the contract, plaintiffs stated a cause of action. The purpose of a "Changed Conditions" clause is to give a cause of action for recovery of additional compensation if the facts alleged constitute "Changed Conditions." Navy Contract Law (2d ed) 391, § 7.25; 24 Fordham L Rev 588, Government Construction Contracts. Plaintiffs' allegations present a question of fact, not of pleading. *Leal v. United States,* 276 F2d 378. The demurrer and objection to the introduction of evidence were properly overruled.

■ It is axiomatic that where trial by jury is waived, to· sustain the judgment based upon the trial court's findings, it must appear that the findings support the judgment and, in turn, that there was some substantial evidence to support the findings. *State ex rel. Sinclair Provision Co. v. Warren Const. Co. et al.,* 129 Or 58, 59, 276 P 260; *Ryland v. Ryland,* 214 Or 548, 330 P2d 175.

The facts are not substantially disputed. The primary question is whether the facts show "unknown conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the plans and specifications" entitling plaintiffs to additional compensation.

A portion of the 5.04 miles of highway construction crossed an irrigated field owned by Lawrence Estes, one of the farmers in that area. The highway divided the Estes field in a generally east-west direction, and the field drained or sloped to the north. The land was irrigated by water taken from Wallowa lake by the Silver Lake Irrigation ditch located south of the Estes property. Estes removed his share of the water from the Silver Lake Irrigation ditch by another ditch which, in turn, had at least three lateral ditches traversing his field from south to north. The new construction divided these latter ditches and crossed over Prairie creek, which was also on the Estes property.

Estes testified he used a flood system of irrigation and irrigated the land between the main ditches by the use of contour ditches. The ditches were "dammed off" every 16 feet to spread the water over the ground. After one portion was irrigated, the dams were moved from place to place until the whole area was covered. Normally he irrigated 5 to 10 acres per day by this method.

Mr. Morrison, one of the plaintiffs, testified that he was familiar with irrigation problems, knew the irrigation season was in July and August, and that he had made a careful investigation of the area before submitting his bid. He also stated that in bidding the job he took into consideration delays and shutdowns

because of the irrigation and allowed an additional 5 cents per yard "for the possible interruptions cause [sic] by irrigation." He also stated that he knew it would be difficult to operate his road equipment if the right of way was wet and muddy. Mr. Lamping, the other partner, testified that he had been advised by Estes at the approximate time he started construction that the irrigation would start the following Monday.

As soon as the irrigation started, the right of way became wet and soggy and in some places covered with water. Plaintiffs' equipment could not operate efficiently, and it was stipulated that plaintiffs were delayed a month in their construction of the highway, resulting in increased costs to plaintiffs.

The plaintiffs assert that they anticipated the water in the main ditches but did not anticipate water in the field from the smaller contour ditches. The plans called for the construction of siphon boxes with corrugated pipes to carry the water from the main ditches under the highway. Pending the construction of the siphon boxes, the water from the main ditches was to be transported across the highway by culverts. Morrison testified that construction was started before the siphon boxes had been installed.

The plans also called for distributing ditches to redistribute the water to the north portion of the Estes property after it came through the siphon boxes. Morrison testified they were unable to construct the distributing ditches on the north side because the engineering had not been accomplished and the ownership of the property had changed. These ditches were constructed later after the irrigation season. No provisions were made in the contract to keep the right of way free of the irrigation water coming from the

Estes field south of the roadway. Because the fill material was wet and soggy, it was removed at the request of the defendant's engineers and replaced by rock. The defendant paid plaintiffs for the rock fill but refused to pay for the removal of the wet fill material. It was stipulated that plaintiff's extra costs were $39,000.

Morrison also testified that he could not suspend the road construction until after the irrigation season because the paving had to be accomplished before the start of adverse weather conditions.

The defendant's assistant division engineer testified that irrigation water was expected, but that the amount of water that developed was unanticipated. He also stated that while he did not expect it "here," it was a condition that "happens on many jobs." A surveyor for the defendant also testified that the amount of water was unanticipated.

Basically, the plaintiffs' position is: they expected irrigation water in the ditches, not in the fields; they expected the irrigation water to cause work delay and interruption and allowed for it in their bid, but did not expect the volume of water or the extent of the delay. Plaintiffs also assert that it was the obligation of the state or the farmers to keep the water off the right of way.

The "Changed Conditions" clause in the instant case is generally the same as that used in the standard United States Government construction contracts, with the exception that the latter generally refer to unknown *physical* conditions. This is not a distinction, however, because the change alleged here pertains to physical conditions.

■ Whether the circumstances constitute a

"Changed Condition" depends upon the facts of each case. *Leal v. United States,* supra.

> "The term 'unusual' does not refer to a condition which would be deemed a geological freak but rather a condition which would not be anticipated by the parties to the contract in entering into their initial agreement." *Western Well Drilling Co. v. United States,* 96 F Supp 377.

The facts in the following cases were held to constitute a changed condition within the meaning of the clause. Appeal of Great Lakes Dredge & Dock Company, C & A (Corp of Engineers, Claims and Appeal Board) 501, *Great Lakes Dredge & Dock v. U. S.,* 119 Ct Cls 504, 96 F Supp 923, cert den 342 US 953, 72 S Ct 624, 96 L ed 708 (encountered unexpected rock ledge); Appeal of Swords-McDougal Company, C & A 489 (ancient roots encountered in excavation for levee); Appeal of Piombo Construction Company, C & A 461 (handling excessively wet materials consisting of decayed vegetation and water); Appeal of Lee Hoffman, C & A 487 (decomposed rock when required solid rock); *Johnson v. United States,* 132 Ct Cls 645, 132 F Supp 698 (disintegration of road caused by spring thaw).

The following cases held that the facts did not constitute a changed condition. Appeal of McVaugh Haynes Company, C & A 293 (flooding of work area); Appeal of Lee and Dean Construction Company, C & A 633 (flooding of site—Act of God); *Arundel Corporation v. United States,* 103 Ct Cls 688, cert den 326 US 752, 66 S Ct 90, 90 L ed 451, reh den 326 US 808, 66 S Ct 166, 90 L ed 493 (scouring effect of a hurricane); *De Armas v. United States,* 108 Ct Cls 436, 70 F Supp 605 (waves from storm damaged levee construction); *Blauner Construction Company v. United*

*States,* 94 Ct Cls 503 (more ledge rock and nearer to surface than contractor anticipated); *Carman v. United States,* 166 F Supp 759 (seasonal flood destroying portion of flood control dam project); *Leal v. United States,* supra (unexpected ground water causing wet fill material). For other cases involving the changed conditions clause see 24 Fordham Law Rev, supra.

In the instant case plaintiffs contracted to build a highway across an irrigated field, knowing it was irrigation season and that Estes planned to turn the water into his field at the time. Plaintiffs' contention that they expected water in the ditches but not in the field is hardly plausible, because they should have anticipated that the area between the ditches would also be irrigated. The plaintiffs admit they anticipated the water might slow down their operations and allowed an additional amount in their bid for this contingency. The latter fact alone would indicate not that the condition was unexpected but that the plaintiffs misjudged the extent thereof. Plaintiffs' complaint that the amount of water was unexpected applies only to the proportion and not to the character of the condition.

The contract provided:

"All work must be done during dry weather, with dry materials, and while the rock base and all other parts of the work that are being worked upon are dry and in otherwise satisfactory condition. Work during wet weather or under other conditions not conducive to best results will not be permitted."

■ Plaintiffs can hardly complain that they were misled by this provision because of plaintiffs' careful examination of the area and the special provisions in the contract hereinbefore mentioned concerning irri-

gation and the construction of irrigation ditches. "If the plaintiff knew or should have known that he would encounter wet material, although information was withheld, then it cannot be said that he was misled." *Leal v. United States,* supra.

■ The plaintiffs' argument that the defendant or the farmers should have protected the right of way from the water does not avoid the fact that plaintiffs knew of and provided in their bid for possible interruption because of irrigation. Mr. Lamping testified that while he:

> "* * * figured it [the water] was a state problem * * * it was impossible to get the flood water from the south to the north after you cut the road; two big ditches, probably ten feet. *You could expect it to flow across the highway.*" (Emphasis supplied.)

The difficulties from the irrigation were within the contemplation of the plaintiffs when they entered into the contract. *Carman v. United States,* supra.

We have mentioned that the facts are not generally disputed. We conclude, however, that the facts adduced do not fall within the purview of the "Changed Conditions" clause of the contract and that plaintiff is not entitled to additional compensation.

Reversed.