[No. 37276. Department Two. March 4, 1965.]

C. W. BIGNOLD, *Respondent,* v. KING COUNTY, *Appellant,* THE STATE OF WASHINGTON, *Defendant.**

*Reported in 399 P. (2d) 611.

*Charles O. Carroll* and *William L. Paul, Jr.,* for appellant.

*Short, Cressman & Cable,* by *Paul R. Cressman* and *Douglas R. Hartwich,* for respondent.

HILL, J.—C. W. Bignold contracted with the state of Washington (for King County) for the construction of a secondary county road. The contract was based on "unit prices" rather than on a "lump sum," with each of the construction items having a separate unit price and quantity. The total bid was $80,024.15.

The contract called for a "cut and fill" plan of construction. The material excavated from one portion of the roadway was to be used for embankment purposes at other places. The plans called for 8,900 cubic yards of borrow-pit material to supplement the excavation material. However, a considerable portion of the excavated material proved to be too wet to be used for embankment purposes, and it also included huge boulders which were likewise unsuitable. This unsuitable material was "wasted" by direction of the resident engineer. The result was that the common and select borrow pits, which the contractor had procured and opened, were inadequate and it became necessary to open new borrow pits, both common and select, at greater distances from the point of use than originally contemplated. These and other items of increased expenditure will be discussed as necessity requires.

The contractor was paid $13,096.97 over the contract price for items on which it was conceded he was entitled to additional compensation. He brought this action for an additional $50,465.72 on the theory of quantum meruit to compensate him for extra work and increased costs. The trial court found $41,878.40 to be due him, there being a specific recovery on eight different items.

From the judgment in that amount, the defendants (state of Washington and King County) each appealed. Since any judgment would have to be paid by King County, it alone has prosecuted the appeal and will hereafter be referred to as the appellant.

The appellant assigns no error to the specific findings of fact which cover the eight items for which recovery was permitted.[1] The sole assignment of error is:

"The trial court erred in determining that none of respondent's damages were controlled by the contract, and concluding that these are claims based on *quantum meruit*, and allowing as recoverable any or all of said claims, and rendering judgment for plaintiff for $41,878.90. . . ."

This is what may be called the "shotgun" approach. By the "rifle" method, a number of specific assignments of error enable counsel and the court to concentrate on successive legal targets in an orderly manner. Needless to say, we prefer the "rifle" method.

■ There having been no assignments of error directed to any of the findings of fact, they are accepted as verities. *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 343 P. (2d) 183 (and cases in its train). There being no factual issues in the case, the appellant must rely on issues of law. Its position is that since the contractor chose to keep the contract alive through his continuing performances, the contract defines the rights and obligations of the parties so completely that every item of additional compensation claimed by the contractor is covered directly or indirectly thereby and there is no room for quantum meruit.

Our inquiry, then, as to each item is not as to whether loss was sustained by the contractor or the amount of it, but whether (having the terms of the contract in mind) the contractor was entitled to recover on that particular item. We shall proceed to a consideration of appellant's position on each of the items making up the judgment of $41,878.40.

Item 1—$ 4,300.00 for increased operating costs resulting from latent subsurface conditions. These subsurface conditions made it necessary to waste the excavated ma-

---

[1]Appellant does, before reaching its assignment of error, set out in full its own proposed findings of fact which were refused by the trial court and, then, under the caption "Findings of Fact to Which Appellants Object," it sets out in full all of Findings No. 5 to No. 13 inclusive and also No. 16.

terial which was so difficult to move that the contractor's equipment could be worked at only 56 per cent of its normal capacity, thereby increasing his operating costs by $4,300.00.

Item 2—$13,391.04 for increased operating costs caused by the order to waste the excavation material because of its unsuitability for embankment purposes. This more than tripled the amount of material taken from the common borrow pits, which, in turn, made it necessary to secure and open other common borrow pits, thus making the material cost more than anticipated. The contractor also had to transport the material over a greater distance and to change plans for placing it.

Item 3—$10,475.06 for increased costs resulting from increased requirements for select roadway borrow material. The subsurface conditions raised these requirements beyond the capacity of the original select borrow pit and forced the contractor to locate and utilize an additional pit more distant from the work area.

As to these three items, the appellant contends that the following provisions of the Standard Specifications, incorporated in the contract, prevent any recovery: Section 2.04 which requires a careful examination of the site; Section 4.04A which requires notice in writing to be given by the contractor of subsurface or latent physical conditions differing materially from those indicated in the contract; and the payment for "extra material" requires the parties to invoke § 4.03 of which condition (3) is applicable.

■ We are satisfied that the contractor made as careful an examination of the site as the circumstances required. The "changed conditions" section (4.04A) is controlling here, and it is quite similar to that found in other standard construction contracts. Construing such sections, courts have generally allowed recovery for additional costs when the condition complained of could not reasonably have been

anticipated by either party to the contract. *General Cas. Co. of America v. United States* (1955), 127 F. Supp. 805; *Shepherd v. United States* (1953), 113 F. Supp. 648. And this is true despite admonitory or exculpatory phrases such as those requiring the contractor to carefully examine the site. *Thomsen-Abbott Constr. Co. v. City of Wausau* (1960), 9 Wis. (2d) 225, 100 N. W. (2d) 921; *Ruff v. United States* (1942) 96 Ct. Cl. 148.

However, a finding that the contractor should have anticipated the condition will bar recovery. *Morrison v. State Highway Comm.* (1960), 225 Ore. 178, 357 P. (2d) 389, 85 A. L. R. (2d) 203; *Leal v. United States* (1960), 276 F. (2d) 378.

The critical question is whether the contractor should have discovered or anticipated the presence of wet subsurface material containing large boulders. This is a question of fact. *Tribble v. Yakima Valley Transp. Co.* (1918), 100 Wash. 589, 171 Pac. 544; *Morrison v. State Highway Comm., supra.* The trial court here found that:

". . . The latent subsurface conditions encountered were neither apparent from a physical examination of the ground prior to construction nor disclosed from an examination of the plans, and were materially different from conditions indicated on the plans. . . ." Finding No. 5.

■ Another finding was that the contractor "gave timely notice of the subsurface conditions on the job site." In addition thereto, the appellant became immediately aware of the changed conditions as soon as they developed and ordered the contractor to perform the changes and extra work involved on these three items. Under such conditions, the county cannot defeat recovery by a contractor even if no written notice was given. *Frederick Snare Corp. v. Maine-New Hampshire Interstate Bridge Authority* (1941), 41 F. Supp. 638; *Hirsch v. United States* (1941), 94 Ct. Cl. 602.

We find nothing in the Standard Specifications which precludes a recovery of items, 1, 2, and 3 on the basis of the findings made.

Item 4—$ 1,371.48 for increased operating costs result-
ing from the failure of appellant's
engineers to abide by their order of
September 19, 1960, to shut down for
the winter. This order was counter-
manded by a second order on Septem-
ber 30, 1960, to proceed with the con-
struction.

Appellant contends, as to this item, that no formal written
order to suspend work, as required by § 8.01 of the Standard
Specifications, was given on September 19 and that the con-
tractor had no right to rely upon the oral directive given at
that time.

The insistence of the appellant that the order of its engi-
neer on September 19 (to shut down the work) should
have been disobeyed because it was not in writing, comes,
it seems to us, with exceptionally bad grace. The contractor,
in compliance with the order of September 19 "directed
all effort toward preparing the project for a winter shut
down." (Finding No. 6) As a direct result of appellant's
"off again, on again" orders, the contractor "incurred actual
increased operating costs in the reasonable sum of $1,371.48."
(Finding No. 6)

■ ■ We have here the classic requisites of an equit-
able estoppel:[2] (a) an admission, statement, or act incon-
sistent with the claim afterward asserted, i.e., the appel-
lant's order to shut down September 19; (b) action by the
other party on the faith of such admission, statement, or
act, i.e., the contractor preparing to comply with the order;
and (c) injury to such other party from allowing the first
party to contradict such admission, statement, or act, i.e.,
contractor incurring increased operating costs in the sum
of $1,371.48 in consequence of a repudiation of the Septem-
ber 19 order. As McQuillin says, "it is also elementary that
the doctrine of estoppel in pais applies to municipal cor-

[2]For one of the best discussions of the applicability of equitable
estoppel in cases involving public contracts, see the majority and dissent-
ing opinions in State v. Northwest Magnesite Co. (1947), 28 Wn. (2d)
1, 182 P. (2d) 643. See also Strand v. State (1943), 16 Wn. (2d) 107,
132 P. (2d) 1101.

porations."[3] The appellant is estopped from asserting that the contractor should have known better than to obey the verbal orders of its agents and should be held to "resolute good faith." *State ex rel. Washington Paving Co. v. Clausen* (1916), 90 Wash. 450, 156 Pac. 554. Requirements of fair dealing underlie government as well as private contracts. *United States v. Johnson* (1946), 153 F. (2d) 846.

Item 5—$ 2,368.92 for increased costs resulting from the refusal of the appellant's engineers to shut down the work until December 29, 1960, despite adverse weather conditions which made first class results impossible.

Item 6—$ 461.04 for increased costs resulting from appellant's order to place common borrow material upon the roadway when first class results could not be obtained because of the wetness of the material.

■ These claims are based upon what the trial court found to be the appellant's arbitrary orders to work when first class results could not be obtained. The appellant urges that, under the third paragraph of § 801 of the Standard Specifications, the decision of when to shut down, because unfavorable weather made it impracticable to secure first class results, was a matter of judgment for its engineer. In such a situation, an engineer need only act in good faith. *Benjamin Foster Co. v. Commonwealth of Mass.* (1945), 318 Mass. 190, 61 N. E. (2d) 147, 166 A. L. R. 925; *McGrath v. Electrical Constr. Co.* (1962), 230 Ore. 295, 370 P. (2d) 231.

Again, the appellant is "locked in" by unchallenged findings of fact which negate the exercise of the requisite good faith by appellant's engineers. The trial court found that the failure of the appellant's engineers to shut down the work prior to December 29, 1960, was "arbitrary and capricious"; that this caused the contractor "to work under adverse weather conditions and with material that could

[3]McQuillin, Municipal Corporations (1950 3d ed.) 29.103.

not properly be placed on the roadway"; and that, as a result thereof, the contractor

". . . was required to maintain the roadway for an unreasonable period of time even though construction work could not be properly carried out. . . ." Finding No. 10.

These conditions, the trial court found, increased the contractor's time on the job 19 days, which increased the operating costs $2,368.92; and,

". . . as a direct result of compacting the excessively wet common borrow material, when first class results could not reasonably be obtained, plaintiff [the contractor] incurred actual increased operating expenses in the reasonable sum of $461.04." Finding No. 11.

We find nothing in the Standard Specifications which precludes a recovery on items 5 and 6 on the basis of the findings made.

Item 7—$ 2,112.24 for increased operating costs resulting from the delay of the engineering crews in furnishing requested pipe measurements, and delay in staking the road with alignment and grade stakes. The latter delay caused the contractor to dig unsuitable drainage ditches which had to be re-excavated on the proper grade.

The appellant urges that compensation for such delays may be awarded only if the notice requirements set forth in the contract are satisfied, but no section in the Standard Specifications deals with delays caused by the failure of the county to perform its part of the contract. Instead, we must look to general contract law.

▮ In every construction contract there is an implied term that the owner or person for whom the work is being done will not hinder or delay the contractor, and for such delays the contractor may recover additional compensation. *Warren Bros. Roads Co. v. United States* (1952), 105 F. Supp. 826; *United States v. L. P. & J. A. Smith* (1921), 256 U. S. 11, 65 L. Ed. 808, 41 S. Ct. 413; *Hammond v. Beeson* (1892), 112 Mo. 190, 20 S. W. 474; *Haley v. Brady* (1943), 17 Wn. (2d) 775, 137 P. (2d) 505, 146 A. L. R. 859; *Ericksen*

*v. Edmonds School Dist.* (1942), 13 Wn. (2d) 398, 125 P. (2d) 275, and cases cited therein.

We find nothing in the contract which precludes recovery on item 7, and there is substantial contract law supporting the recovery.

■ Before considering the final item in the trial court's award—$7,388.62 for profits—we should consider the appellant's contention that the application of "quantum meruit" is inappropriate in the present action. The term literally means "as much as deserved." *Losli v. Foster* (1950), 37 Wn. (2d) 220, 233, 222 P. (2d) 824. It provides an appropriate basis for recovery when substantial changes occur which are not covered by the contract and were not within the contemplation of the parties, if the effect is to require extra work and materials or to cause substantial loss to the contractor. *Schuehle v. Seattle* (1939), 199 Wash. 675, 92 P. (2d) 1109. "Quantum meruit" clearly covers items 1 through 3.

Moreover, the conduct of the appellant, complained of in items 4 through 7, unquestionably required the contractor to perform extra work which would not otherwise have been necessary, and it is only just that there be compensation therefor. *Haley v. Brady, supra; Ericksen v. Edmonds School Dist. supra; McHugh v. Tacoma* (1913), 76 Wash. 127, 135 Pac. 1011. All of these items were outside the coverage of the contract, and so were not covered by the so-called underrun-overrun "comparison of quantities" provision of the Standard Specifications, as argued by the appellant.

■ We turn now to a consideration of the allowance of profit. The appellant does not challenge the amount of the profit allowed. It simply says there should be no allowance for profit in quantum meruit. However, no authority is cited to sustain that position. This court has decided that profit is an appropriate factor in determining the quantum meruit, where there are no circumstances which call for its exclusion. *Losli v. Foster, supra.* See also *Central Steel Erection Co. v. Will* (1962), 304 F. (2d) 548.

The trial court properly allowed profits. The profits, with the other 7 items, made a total of $41,878.40; and the judgment in that amount is affirmed.

DONWORTH, WEAVER, OTT, and HAMILTON, JJ., concur.