[No. 466-2.    Division Two.    November 22, 1972.]

V. C. EDWARDS CONTRACTING CO., INC., *Respondent*, v. PORT OF TACOMA, *Appellant*, MARYLAND CASUALTY COMPANY *et al.*, *Respondents.*

*James J. Mason* (of *Binns, Petrich, Mason, Hester & Robson*), for appellant.

*George F. Marsico* (of *Burkey, Marsico, Rovai & Mc-Goffin*), for respondents V. C. Edwards Contracting Co. et al.

*Ray Graves* (of *Murray, Scott, McGavick, Gagliardi, Graves, Lane & Lowry*), for respondent McDowell-Wellman Engineering Company.

ARMSTRONG, J.—Defendant Port of Tacoma appeals from a judgment of $225,595.49 in favor of V. C. Edwards Contracting Company and against the Port of Tacoma. Defendant also appeals from a judgment of dismissal dismissing a third-party defendant, McDowell-Wellman Engineering Company.

This appeal raises three issues: (1) Was there substantial evidence of breach of contract by the Port of Tacoma? (2) Were damages properly assessed? (3) Did the trial court properly dismiss the third-party defendant? We answer each question in the affirmative.

The Port of Tacoma (Port) and V. C. Edwards Contracting Company (Edwards) entered into a contract on December 13, 1967. The contract provided that Edwards would construct a rail service yard and connecting trackage on the Port's premises, the Tacoma tideflats, and the Port would supply the necessary materials. McDowell-Wellman Engineering Company, independent consulting engineers, had prepared the plans and specifications according to information supplied by the Port. Among other things, the plans called for 1,000 yards of fill to be used as ballast under the track. This fill was to be excavated by the contractor from other portions of the site. After consulting with McDowell-Wellman, the Port issued an addendum (No. 2) to the plans on November 15, 1967 which called the contractor's attention to five separate places where a sewer

project would interfere with this rail project. The bids were opened 1 week later.

Notice to proceed was given to Edwards and construction began on January 18, 1968. For several reasons the work was not completed within the 270 days specified in the contract documents.

Edwards brought this suit against the Port alleging that the delay was caused by, among other things, defective plans, failure of the Port to supply necessary materials and failure of the Port to warn the plaintiff of conflicts with other contractors in the area. The Port entered a general denial, cross-complained for work to be completed and filed a third-party complaint against McDowell-Wellman alleging responsibility for the defective plans.

The trial court found that the Port substantially breached its contract in several respects. The court found the Port's failure to make decisions within a reasonable time, failure to furnish the promised material, and the Port's unintentionally misleading addendum No. 2 caused the plaintiff substantial delay in completing the work and was a substantial breach of contract.

The court also found that the contractor had to correct several design errors in the plans and that addendum No. 2 was misleading because the paths of Edwards and the sewer contractor crossed in over 30 places, not in only 5 as specified. The correction of the design errors entailed re-surveying and recalculating parts of the plans plus importing an extra 92,000 yards of fill to be used as ballast when the plans called for only 1,000 yards. The misleading addendum and the Port's failure to supply materials and make decisions required Edwards to construct the railroad piecemeal and to shut down operations entirely for a short time during August, 1968. All this required Edwards to perform extra work not contemplated in the contract. The court found the contractor's cost (minus $18,000 due to overmanning) for this extra work to be reasonable so awarded plaintiff recovery for the extra costs plus profit in quantum meruit.

The court dismissed defendant's third-party complaint against McDowell-Wellman because it found that the defendant Port was equally responsible for the design errors.

■ Defendant's first contention is that the trial court erred in finding that the Port caused the delay. We disagree. A review of the record satisfies us that there is substantial evidence to support the court's finding that the Port did cause the delay. Where this court finds substantial evidence to support the finding of the trial court, we will not disturb it. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

Next defendant contends that the delay was not a breach of contract for which damages are recoverable because the general conditions of the contract provide that the contractor's sole remedy in the event of owner-caused delay is a time extension. We disagree.

Paragraph 19 of the general conditions provides in relevant part:

[T]he contractor shall not be charged with liquidated damages or any excess cost when the delay in completion of the work is due:

. . .

(b) To unforseeable cause beyond the control and without the fault or negligence of the contractor, including but not restricted to, acts of God, or of the public enemy, acts of the owner, acts of another contractor in the performance of a contract with the owner, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and severe weather.

Paragraph 19 states merely that the contractor will not be liable in damages in the event of a delay. Impliedly, therefore, the *Port's* sole remedy in the event of a delay not caused by the contractor is a time extension. Neither paragraph 19 nor any other provision in the contract precludes the contractor from recovering damages caused by the owner's delay.

Defendant's next contention is that the trial court erred in its assessment of damages. Here the Port argues four matters: (1) the total reasonable cost to the plaintiff is not

the proper measure of damages, (2) the total cost of $706,918.42 was not shown to be reasonable, (3) the expense due to overmanning by plaintiff ($18,000), which was deducted from the total reasonable cost to the plaintiff, was not proven, and (4) the plaintiff was not entitled to overhead and profit of $137,783.68.

We turn first to the proper measure of damages. Defendant contends that the proper measure of damages is the contract price plus the damage occasioned by the breach. Defendant would then require the plaintiff to show exactly what damage he suffered by the breach. If this were an ordinary breach of contract case we would agree. However, where an owner-caused delay has required the contractor to perform extra work not contemplated in the contract Washington cases have awarded recovery therefor in quantum meruit. These cases allow the contractor to recover the reasonable cost of performance where the delay caused by the owner is so substantial as to materially alter the contract. *Bignold v. King County*, 65 Wn.2d 817, 399 P.2d 611 (1965); *Schuehle v. Seattle*, 199 Wash. 675, 92 P.2d 1109 (1939).

In *Bignold v. King County* the contract called for a "cut and fill" plan of constructing a county road. The material excavated from one portion of the roadway was to be used for embankment purposes at other places. The plans specified how much extra fill material would be required. The contractor submitted his bid according to the plans but the subsurface conditions proved to be too wet to allow him to use the excavated material as fill. The result was that the contractor had to perform extra excavation to produce enough fill. This extra work involved additional costs. The Supreme Court allowed recovery for these additional costs, saying at page 821: "[C]ourts have generally allowed recovery for additional costs when the condition complained of could not reasonably have been anticipated by either party to the contract." The court further held that the critical question is whether the *contractor* should have discovered or anticipated the changed condition. This is a

question of fact. *Tribble v. Yakima Valley Transp. Co.*, 100 Wash. 589, 171 P. 544 (1918).

The trial court here found:

> [D]ue to the failure of the PORT OF TACOMA to furnish material and to make decisions within a reasonable time, and further due to the wide variance between the quantity and quality of borrow material represented by the contract, this misleading effect of Addendum No. 2, the interference by other contractors in the right-of-way of the railroad, the lack of available material necessary for a continuous operation, the indecision of the PORT OF TACOMA, all resulted in the plaintiff being unable to proceed in a normal *contemplated* manner to construct said railway yard and adjoining lines, and it was unable to utilize its equipment and manpower to its fullest extent; and its costs of operation were greatly increased; and that it was required to work in the fall of 1969 when under normal conditions, would have completed the contract prior to the wet season.

(Italics ours. Finding 31.)

Although the test stated in *Bignold v. King County, supra*, is whether the contractor should have anticipated the changed condition, we note that "contemplated" as used by the trial court is substantially similar to "anticipated." Accordingly we hold that the trial court applied the proper test.

██   Based on the trial court's finding that the contractor did not anticipate or contemplate the delays, the contractor is entitled to the reasonable cost of performing the work as changed by the unanticipated circumstances. Defendant contends that plaintiff must prove his increased cost with particularity. We do not agree. A plaintiff is not required to prove his damages with precision. Uncertainty as to the nature, existence or cause of damage is fatal; uncertainty as to the precise amount of damage is not fatal. *Wenzler & Ward Plumbing & Heating Co. v. Sellen*, 53 Wn.2d 96, 330 P.2d 1068 (1958); *Reynolds Metals v. Electric Smith Constr. & Equip. Co.*, 4 Wn. App. 695, 483 P.2d 880 (1971). The defendant whose wrongful acts give rise to the injury may not benefit from the difficulty of determin-

ing the precise amount of damage when the plaintiff has produced the best evidence available and such evidence is a sufficient basis for estimating his loss. *Reefer Queen Co. v. Marine Constr. & Design Co.*, 73 Wn.2d 774, 440 P.2d 448 (1968).

The plaintiff's proof was not sketchy by any means; plaintiff produced the best evidence available. Although this evidence was not sufficient to ascertain damages with mathematical precision, the plaintiff's evidence provided a reasonable basis for allowing the trial court to exercise its sound discretion. We will not disturb a proper exercise of sound discretion.

Turning next to the total reasonable cost of $706,918.42 and the $18,000 figure due to overmanning, we find substantial evidence to support both figures. Both Harold Grier, the project manager, and V. C. Edwards, president of the plaintiff contracting company, testified as to the reasonableness of the total cost. To determine the $18,000 figure the trial court had before it a schedule of wages, testimony by the engineer's representative that he would have performed the work with only 25 to 30 men when in fact about 70 were used, testimony that the plaintiff had to perform certain work manually during the time some of its own equipment was not working, and testimony by Mr. Grier that he prosecuted the work in a diligent manner. Under these circumstances the court deducted $18,000 ($150 per week for 20 extra men for 6 weeks). We think such an award is a proper exercise of the sound discretion of the trial court. Mathematical precision in the award of damages is often impossible. Where damages cannot be ascertained with precision the trial court must exercise its sound discretion. *Reynolds Metals v. Electric Smith Constr. & Equip. Co., supra; Wenzler & Ward Plumbing & Heating Co. v. Sellen, supra.*

■ We turn next to the propriety of allowing profit in an award based on quantum meruit. Defendant contends that the court should not have allowed the contractor profit on the additional costs. However, the rule is well settled

that where a contractor is awarded his reasonable costs in quantum meruit, he is also entitled to profit thereon. *Bignold v. King County, supra; Losli v. Foster,* 37 Wn.2d 220, 222 P.2d 824 (1950). The plaintiff introduced substantial evidence to show that 20 percent of costs was a reasonable profit figure.

Defendant's last contention is that the court erred in dismissing the third-party complaint against McDowell-Wellman. Defendant assigns error only to the judgment of dismissal, not to any findings of fact entered supporting the dismissal. Accordingly, the findings will be treated as verities on appeal. CAROA 43.

The trial court found specifically that no evidence was presented establishing any sum in damages to the Port chargeable to McDowell-Wellman since the Port knew of the errors in the plans and was equally responsible for them.

■ Thus, the situation is not one where the Port introduced the best evidence available and the trial court should exercise its discretion in awarding damages. The situation is one where no evidence at all was presented by the Port showing that McDowell-Wellman was solely responsible for any part of the delay. The *existence* of damage is uncertain. This is fatal.

Judgment affirmed.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied January 2, 1973.

Review granted by Supreme Court March 6, 1973.