27 P.3d 609 (2001)
107 Wash.App. 61
BASIN PAVING COMPANY, a Washington corporation, Plaintiff,
v.
MIKE M. JOHNSON, INC., a Washington corporation, Appellant,
Contractors Bonding and Insurance Company, a Washington corporation, Defendant,
Town of Lind, Washington, a municipal corporation, Respondent.
No. 19224-5-III.
Court of Appeals of Washington, Division 3, Panel Nine.
May 29, 2001.
Reconsideration Denied and Publication Ordered July 19, 2001.
*610 Terry Miller, Kennewick, for Appellant.
Margaret L. Arpin, Patrick M. Risken, Evans, Craven & Lackie, Spokane, for Respondent.
SWEENEY, J.
A contractor may recover for a changed condition when it "could not reasonably have been anticipated by either party to the contract." Bignold v. King County, 65 Wash.2d 817, 821-22, 399 P.2d 611 (1965). Mike M. Johnson, Inc. (MMJ) was awarded the contract for the Town of Lind's waste water and water system project. MMJ encountered more subsurface rock than it expected based on boring tests conducted on behalf of Lind. The trial court summarily dismissed MMJ's cross-claims against Lind for additional compensation based on a "changed condition."
We agree with the trial court that there was no changed condition because: (1) all subsurface conditions were labeled unclassified; (2) the presence of rock was foreseeable based on the contract's language and the boring tests; (3) the contract made complete reliance on the test data unreasonable; and (4) MMJ admitted that the presence of more subsurface rock than was indicated in the test data was foreseeable. We therefore affirm.

FACTS
The Town of Lind requested bids for its 1996 waste water and water system project. Emcon Northwest, Inc. was the project engineer. In anticipation of the project, Lind had boring tests performed at 50-foot intervals along the project site and drawings made based on the boring tests. The bulk of the project was excavation.
MMJ was awarded the contract. The contract references excavation and the boring tests in several different sections. It provided, in relevant part:
All excavation is unclassified and payment for rock excavation is not authorized. Prospective bidders are advised to examine the pipeline routes carefully and to their own satisfaction determine the likelihood of encountering rock formations. Boring results obtained by Northwest Rock Contractors (Mark Johnson) are shown on the Sewer Line Profile and Appendix A. The test drilling information is included for the use of prospective bidders to help evaluate the cost of unclassified excavation. EMCON is not responsible for the accuracy of the included boring information.
Clerk's Papers (CP) at 33 (emphasis in original).
The information shown on the included Plans is to be used by the Contractor to assist him to properly evaluate the amount and character of the work that might be required. Such information is given, however, as being the best factual information available without assumption of responsibility as to its accuracy or for any conclusions that the Contractor might draw therefrom. The Contractor shall promptly and before such conditions are disturbed notify the Engineer in writing of: 1) subsurface or latent physical conditions at the site differing materially from those indicated in this Contract; or 2) unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and from those generally recognized as inherent in the work of the character provided for in this Contract.
CP at 36.
All excavation in this Schedule of work shall be considered as "unclassified excavation" and shall consist of excavating and removing all formations and materials, natural or man-made, irrespective of nature or condition, encountered within the limits of the defined trenches and other necessary areas of excavation.
Prospective Bidders are advised to examine the site and make their own determination *611 regarding rock formations (see test borings).
CP at 53 (emphasis in original).
All excavation in this Schedule of work shall be considered as "unclassified excavation" and shall consist of excavating and removing all formations and materials, natural or man-made, irrespective of nature or condition, encountered within the limits of the defined trenches and other necessary areas of excavation. Payment for rock excavation is not provided.

CP at 56 (emphasis in original).
MMJ encountered more rock than it anticipated from the boring tests. The project was finished late. Claims arose among MMJ, its subcontractors, and Lind. MMJ cross-claimed against Lind claiming it is entitled to additional compensation for the changed conditions. Lind moved for summary judgment. The court summarily dismissed MMJ's claims for additional compensation based on changed conditions.

DISCUSSION
Changed Condition. MMJ contends that the contract specifically contained a "changed condition" clause which anticipated the additional compensation it wants for changed conditions. It contends the amount of rock present was a changed condition because it differed from the amount shown in the drawings based on the boring tests.
We review an order granting summary judgment de novo. And in doing so we engage in the same inquiry as the trial courtis there a genuine issue as to any material fact, and is the moving party entitled to judgment as a matter of law? We consider the evidence and the reasonable inferences therefrom in a light most favorable to the nonmoving party. Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998).
Excavation contracts may allow a contractor to receive additional compensation for unforeseen conditions:
"[W]here plans or specifications lead a public contractor reasonably to believe that conditions indicated therein exist, and may be relied upon in making his bid, he will be entitled to compensation for extra work or expense made necessary by conditions being other than as so represented.'"
Dravo Corp. v. Municipality of Metro. Seattle, 79 Wash.2d 214, 218, 484 P.2d 399 (1971) (quoting Maryland Cas. Co. v. City of Seattle, 9 Wash.2d 666, 670, 116 P.2d 280 (1941)).
Recovery is, however, limited to when the "condition complained of could not reasonably have been anticipated by either party to the contract." Bignold v. King County, 65 Wash.2d 817, 821-22, 399 P.2d 611 (1965); Donald B. Murphy Contractors, Inc. v. State, 40 Wash.App. 98, 103, 696 P.2d 1270, 56 A.L.R.4th 1027 (1985); see also Hensel Phelps Constr. Co. v. King County, 57 Wash. App. 170, 174-76, 787 P.2d 58 (1990) (quantum meruit doctrine only applies when changed condition was unforeseeable to contractor); Modern Builders, Inc. v. Manke, 27 Wash.App. 86, 94, 615 P.2d 1332 (1980) (same). "[A] finding that the contractor should have anticipated the condition will bar recovery." Bignold, 65 Wash.2d at 822, 399 P.2d 611.
Applying this rule has led Washington courts to deny contractors' claims when they encountered differing levels of underwater hardpan,[1] wet and soft soil that required a more expensive means of tunneling,[2] and more and larger boulders in a dredging operation to construct a marina.[3]
Here, the presence of rock in any amount is not a changed condition entitling MMJ to additional compensation for several reasons.
First, the contract labeled all the excavation "unclassified." CP at 33, 53, 56. The Town of Lind then began with no contractual *612 representation of the material to be excavated. The contract further stated that excavation "shall consist of excavating and removing all formations and materials, natural or man-made, irrespective of nature or condition, encountered within the limits of the defined trenches and other necessary areas of excavation." CP at 53, 56 (emphasis added). Thus, Lind made no representations as to what the contractor would find under the surface.
Second, the contract not only referenced the possible presence of rock, but placed the burden of predicting its presence on the contractor: "Prospective bidders are advised to examine the pipeline routes carefully and to their own satisfaction determine the likelihood of encountering rock formations." CP at 33 (emphasis in original). And the boring tests showed the presence of rock along the pipeline routes. MMJ's biggest complaint was with "Line A." There were 93 boring tests made on Line A, and rock was found in 57 of the boring tests. CP at 70-71. Thus, rock was discovered in 61 percent of the boring test locations.
Third, the contract limited contractor reliance on the boring tests and plans:
The test drilling information is included for the use of prospective bidders to help evaluate the cost of unclassified excavation. EMCON is not responsible for the accuracy of the included boring information.

CP at 33 (emphasis added).
The information shown on the included Plans is to be used by the Contractor to assist him to properly evaluate the amount and character of the work that might be required. Such information is given, however, as being the best factual information available without assumption of responsibility as to its accuracy or for any conclusions that the Contractor might draw therefrom.

CP at 36 (emphasis added).
[R]eports of explorations and tests of subsurface conditions at or contiguous to the site that have been utilized by the Engineer in preparing the Contract Documents and those drawings of physical conditions in or relating to existing surface or subsurface structures at or contiguous to the site may be used with limited reliance by the Contractor. Contractor may rely upon the general accuracy of the "technical data" contained in the reports and drawings, but such reports and drawings are not Contract Documents.

CP at 38 (emphasis added). The contract expressly stated that Lind did not warrant the accuracy of the boring tests, and specifically stated that a contractor's reliance must be limited.
Finally, MMJ's president, Mike Johnson, admitted in his deposition that he knew there could have been more subsurface rock than what was indicated in the boring tests:
Q. Did you consider that was at least a possibility that you might encounter rock formations that weren't shown by the data?
A. I think that's an assumption you could make, yes, that it might be possible. Uh-huh.
CP at 50.
In sum, a contractor cannot recover additional compensation for a "changed condition" if the complained of condition was foreseeable. Bignold, 65 Wash.2d at 822, 399 P.2d 611.
The court properly dismissed MMJ's claim because: (1) the presence of rock in any amount cannot be a changed condition when all subsurface conditions are labeled unclassified; (2) the presence of rock was foreseeable based on the contract's language and the boring tests; (3) the contract made complete reliance on the test data unreasonable; and (4) MMJ admitted that the presence of more subsurface rock than was indicated in the test data was foreseeable. We view the evidence in the light most favorable to MMJ. When so viewed, a reasonable person could reach only one resultthere was no changed condition. The summary dismissal was proper. See Ford v. Red Lion Inns, 67 Wash.App. 766, 769, 840 P.2d 198 (1992) (summary judgment is proper when reasonable minds can reach only one result).
Attorney Fees. MMJ argues it is entitled to an award of attorney fees on appeal because its underlying cross-claim included a *613 claim for attorney fees and costs. RCW 39.76.040 and 39.04.240 both provide for an award of attorney fees to the prevailing party. Thus, MMJ argues it is entitled to an award of attorney fees under RAP 18.1.
MMJ was not the prevailing party at trial. Nor is it the prevailing party on appeal. Thus, its request for attorney fees is denied.
The trial court's dismissal of MMJ's cross-claims is affirmed.
WE CONCUR: KURTZ, C.J., and KATO, J.
NOTES
[1] See Dravo, 79 Wash.2d 214, 484 P.2d 399.
[2] See Maryland Cas. Co., 9 Wash.2d at 669, 116 P.2d 280.
[3] See Nelson Constr. Co. of Ferndale, Inc. v. Port of Bremerton, 20 Wash.App. 321, 330, 582 P.2d 511 (1978).